Paul CARACCIOLI, Jr., et al., Plaintiffs,

v.

KFC MANUFACTURING CORP., etc., Defendant.

No. 89–1618–CIV–T–17(A).

United States District Court,
M.D. Florida,
Tampa Division.

April 12, 1991.

Mark E. Clements, R. James Platt, Lakeland, Fla., for plaintiffs.

Fred J. Lotterhos, III, Holland & Knight, Lakeland, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

The cause is before the Court on Defendant's motion for summary judgment, filed March 22, 1991, and response thereto, filed April 4, 1991.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274.

The amended complaint in this cause was filed April 10, 1990, naming as defendant KFC National Management Company (the Management Company) as the successor corporation to KFC Manufacturing Corporation (the Corporation).

The complaint alleged that on or about September 11, 1988, Plaintiff Paul Caraccioli, Jr. was an employee of the Management Company and was injured in the course of his employment, operating an automatic cooker. Further, the complaint alleged that the Management Company designed and manufactured the automatic cooker and placed it in the stream of commerce in a dangerous and defective condition.

## FACTS

The parties have entered into a joint stipulation of material facts relevant to the motion for summary judgment (Ex. A to Docket 13) as set forth following:

1. On August 31, 1979, the Management Company merged with the Corporation, becoming KFC Management.

2. On or about September 11, 1988, Mr. Caraccioli was an employee of KFC Management. In the course of his employment, he was operating an automatic cooker at the Kentucky Fried Chicken store (the Restaurant) in Lakeland, Florida. KFC Management owned the store and the cooker.

3. The cooker was designed and manufactured by the Corporation in about 1974, prior to the merger. The cooker was designed and manufactured exclusively for use in the Restaurants and was not offered for sale to the general public. All service and repair of the cooker was performed by employees of KFC Management.

4. On or about September 11, 1988, while operating the cooker Mr. Caraccioli was injured by a discharge of hot cooking shortening onto his lower extremities.

5. Thereafter, Mr. Caraccioli filed a worker's compensation against KFC Management and has received or is receiving worker's compensation benefits to the extent provided for by Chapter 440, Fla. Stat.

## DISCUSSION

Defendant asserts that its liability is prescribed by the Florida Worker's Compensation Act, § 440.10, Fla.Stat. and is exclusive as to these Plaintiffs. The Corporation and the Management Company merged pursuant to Delaware corporation law, 8 Del.C. § 259:

> [A]ll debts, liabilities and duties of the respective constituent corporations shall *thenceforth* attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it. (emphasis supplied)

Thus claims arising following merger are protected by the assurance that it is not relevant which constituent was responsible for the claim because the successor corporation is liable.

The hallmark of federalism is the respect due from the federal government to the sovereignty of individual states. In the exercise of diversity jurisdiction, a federal court is compelled to follow state law and be guided by legislative enactments and judicial precedents. Unlike a state court, the federal courts, in diversity cases, "are not free to overrule existing state precedent or chart the future course of state law in such manner as we may see fit". *Kohr v. Raybestos–Manhattan, Inc.*, 522 F.Supp. 1070, 1072 (E.D.Pa.1981).

In general worker's compensation laws are to provide an expeditious remedy for injured employees without resort to proof of fault. The intent of the Florida legislature in enacting Ch. 440, Fla.Stat. was to "assure the quick and efficient delivery of disability and medical benefits" based on a "mutual renunciation of common law rights and defenses by employers and employees alike."

In a number of courts, it has been held that worker's compensation is the exclusive remedy *despite* the possible assumption of the employer of obligations to the employee other than those arising out of the employment relationship. Other courts have carved out limited exceptions to the exclusivity of remedy doctrine. 9 A.L.R.4th 873, *2.

There are two (2) related doctrines which it appears Plaintiffs might rely on to defeat the arguments of Defendant. The first of these is the "dual-capacity" doctrine which

has been adopted by some courts. This doctrine requires that:

> "... there must be an allegation and showing that the employer occupied two independent and unrelated relationships with the employee, that at the time of these roles of the employer there were occasioned two different obligations to this employee, and that the employer had during such time assumed a role other than that of employer."

*Schump v. Firestone Tire and Rubber Co.*, 44 Ohio St.3d 148, 541 N.E.2d 1040 (1989), citing *Freese v. Consolidated Rail Corp.*, 4 Ohio St.3d 5, 445 N.E.2d 1110 (1983). Further, the court in *Schump* stated:

> It is universally held that where an employer designs and manufactures a product for use by its employees and not for sale to the general public, an employee injured while using that product within the scope of his employment may not maintain a products liability action against his employer under the dual-capacity doctrine on the theory that the employer assumed an independent role as manufacturer. See, e.g., *Bowen v. Goodyear Tire & Rubber Co.* (Ala.1987), 516 So.2d 570; *Hills v. Salt River Project Assn.* (App.1985), 144 Ariz. 421, 698 P.2d 216; *Campbell v. Black Mountain Spruce, Inc.* (Colo.App.1983), 677 P.2d 379; *Roberson v. Nooter Corp.* (Fla.App.1984), 459 So.2d 1156; *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill.App.3d 787, 354 N.E.2d 553; *Needham v. Fred's Frozen Foods, Inc.* (1977), 171 Ind.App. 671, 359 N.E.2d 544; *Baker v. Armco, Inc.* (Mo.App.1984), 684 S.W.2d 81; *Stewart v. CMI Corp.* (Utah 1987), 740 P.2d 1340 ...
>
> "The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first, but whether the second function generates obligations unrelated to those flowing from that of employer. This means that the employer must step outside the boundaries of the employer-employee relationship, creating separate distinct duties to the employee; the fact of injury must be incidental to the employment relationship." (citing *Weber v. Armco[, Inc.* (Okla.1983), 663 P.2d 1221]).

The parties have not cited, and the Court's independent research has not revealed, any Florida cases specifically adopting the dual-capacity doctrine. In *Roberson v. Nooter Corp.*, 459 So.2d 1156 (Fla. 1st D.C.A.1984), the plaintiff was injured by an explosion of a continuous polymerization finisher which was manufactured by Chemstrand, a subsidiary of defendant-employer Monsanto. The *Roberson* court discussed the dual-capacity theory, as set forth by California law:

> Under this theory an employee who is injured by a product manufactured by the employer primarily for sale to the general public may state a cause of action against the employer ... the California courts, however, have *upheld the exclusive remedy of worker's compensation when the employer manufactures a product for its own use.* (cite omitted) The Florida courts have yet to express whether the "dual capacity" theory would extend the employer's liability beyond Chap. 440. (emphasis added).

That court declined to determine the viability of the doctrine in Florida because in that case the finisher was *not* manufactured primarily for sale to the general public and the court found the worker's compensation remedies exclusive for that plaintiff.

The dual-capacity doctrine is to be strictly construed. *Sago v. Amax Aluminum Mill Products, Inc.*, 67 Ill.App.3d 271, 24 Ill.Dec. 250, 385 N.E.2d 17 (1978). In *Sago*, the machine which caused the injury was manufactured, for sale to the public, by a company owned by the defendant-employer. The Illinois court stated, even though recognizing it, that the dual-capacity doctrine was not applicable to cases in which the injury was sustained in the scope of the employment. One court has stated that a general partner of an employer/defendant might be immune from a products liability action, if the product in question was supplied in the capacity as general partner of the employer. *Dorado v. Knudsen Corp.*, 103 Cal.App.3d 605, 163 Cal.Rptr. 477 (2d Dist.1980).

If Plaintiff is asking to have the dual-capacity doctrine applied to this case, the Court must decline. There are no Florida cases or statutes, that the Court can find, that expressly adopt the doctrine and the Court is unwilling to do so for the state. The only case which the Court has found, *Roberson v. Nooter*, declined to adopt the doctrine because the product was not designed primarily for sale to the general public.

However, even assuming that Florida would adopt the dual-capacity doctrine, the Court would find that it did not permit these plaintiffs from bringing this action. The injury sustained here was sustained solely in the course of Plaintiff's employment. Further, the machine was manufactured by a "sister" company exclusively for use in the restaurants of the Company and by its employees. The Court finds that under current Florida caselaw and legislation, the exclusive remedy for Plaintiffs is the worker's compensation scheme.

A related doctrine appearing on a very limited basis in the caselaw is referred to as the "dual-persona" doctrine. In *Billy v. Consolidated Machine Tool*, 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980), the court rejected the dual-capacity doctrine, finding the doctrine fundamentally unsound. In *Billy*, the employer was the successor to the manufacturer of the machine in question and that court found the employer was a dual-persona, as the successor to the third-party tortfeasors.

This doctrine has not been adopted by Florida and, again, this Court will not adopt a doctrine which may substantially effect the exclusivity of the worker's compensation scheme the state has created without any indication that the courts of this state would approve and adopt the dual-persona doctrine. Accordingly, it is

ORDERED that the motion for summary judgment be granted and the Clerk of the Court be directed to enter judgment in favor of Defendant and against Plaintiff.

DONE and ORDERED.