Guy THOMAS, By His Guardian, the City National Bank of Ft. Smith, et al. *v.* VALMAC INDUSTRIES, INC. and Tyson Foods, Inc.

91-30                                            812 S.W.2d 673

Supreme Court of Arkansas
Opinion delivered July 1, 1991

*Matthew P. Horan, Nicholas H. Patton,* and *Gregory A. Hoover,* for appellants.

*Bassett Law Firm,* by: *Woody Bassett* and *Gary V. Weeks,* for appellees.

CONSTANCE G. CLARK, Special Justice. Guy Thomas, a truck driver for Tyson Foods, Inc., was injured on May 13, 1987, while working on a trailer in the course and scope of his employment with Tyson. On March 23, 1990, Mr. Thomas's guardian, the City National Bank of Fort Smith, and his wife, Mary Thomas, filed suit in Johnson County Circuit Court to recover damages for personal injuries sustained as a result of the accident. The plaintiffs named as defendants in the action Valmac Industries, Inc., Tyson Foods, Inc. and four other persons not parties to this appeal. Mr. Thomas claimed that his injuries were the proximate result of the defendants' negligence and the unreasonably dangerous condition of the trailer, which he alleged was owned by and had been defectively modified pursuant to instructions from Valmac. The complaint also alleged that on May 25, 1988, Valmac merged with Tyson and that Tyson thereby succeeded to the liabilities of the predecessor corporation.

Valmac and Tyson filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) and (b)(6) of the Arkansas Rules of Civil Procedure. They contended that the plaintiffs' exclusive rights and remedies were those provided under the Arkansas Workers' Compensation Act and, therefore, the circuit court lacked jurisdiction over the subject matter of the action and the complaint failed to state facts upon which relief could be granted. The trial court granted the motion and dismissed the complaint as against Valmac and Tyson. Pursuant to the joint motion of the parties, the court then entered a final judgment under Ark. R. Civ. P. 54(b), paving the way for this appeal by the Thomases. We conclude that the trial court did have jurisdiction of the subject

matter of the action and that the complaint stated facts upon which relief could be granted and, therefore, reverse.

The issue presented by this appeal is one of first impression in this state—does the exclusivity provision of our Workers' Compensation Act bar an injured worker from pursuing a tort claim against his employer as the successor to the liabilities of the alleged tortfeasor? We find that an injured employee who would otherwise have a valid third-party claim against the alleged tortfeasor should not be barred from pursuing his action simply because the tortfeasor merged with the injured worker's employer.

■ It has long been settled that, as a general rule, an employer who carries workers' compensation insurance is immune from liability for damages in a tort action brought by an injured employee. *Fore* v. *Circuit Court of Izard County*, 292 Ark. 13, 727 S.W.2d 840 (1987); *Brown* v. *Patterson Constr. Co.*, 235 Ark. 433, 361 S.W.2d 14 (1962). This so-called exclusivity doctrine arises out of Ark. Code Ann. § 11-9-105 (1987), which provides that "[t]he rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee . . . ." Certain narrow exceptions to the general rule have been carved out by the courts. For instance, an employer who wilfully and intentionally injures his employee is not immune from a common law tort action. *Heskett* v. *Fisher Laundry & Cleaners Co.*, 217 Ark. 350, 230 S.W.2d 28 (1950).

■ Litigants in some states attempted to circumvent the exclusive remedy principle by professing to bring suit against their employers in some capacity other than as employers—for example, as owners of property upon which a job-related injury occurred or as manufacturers or vendors of hazardous equipment causing injury on the job. Under this dual capacity doctrine, an employer who would ordinarily be protected from tort liabilities by the exclusivity rule could become liable in tort if, in addition to his relationship as employer, he occupied some other capacity that could be said to confer upon him obligations independent of those imposed upon him as an employer. Professor Larson explains in his treatise why the dual capacity doctrine formerly embraced by some courts has now fallen into disfavor:

> When one considers how many such added relations an employer might have in the course of a day's work—as landowner, land occupier, products manufacturer, installer, modifier, vendor, bailor, repairman, vehicle owner, shipowner, doctor, hospital, health services provider, self-insurer, safety inspector—it is plain enough that this trend could go a long way toward demolishing the exclusive remedy principle. 2A A. Larson, *The Law of Workmen's Compensation*, § 72.81(a) (1990).

Professor Larson goes on to state that while the dual capacity doctrine is unsound, the dual persona doctrine, which recognizes the duality of legal persons, is a legitimate concept. Thus, says Larson,

> An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person. 2A A. Larson, *The Law of Workmen's Compensation*, § 72.81 (1990).

It is the dual persona doctrine which the appellants urge us now to adopt.

We recently discussed the dual capacity and dual persona doctrines in *Landers* v. *Energy Systems Management Co.*, 305 Ark. 267, 807 S.W.2d 33 (1991). The plaintiff in that case, Kenneth Landers, was employed by PSC Laboratory Management Services, which was participating in a joint venture with Energy Systems Management Co. (Ensco). Landers' suit against Ensco for negligence was barred by the trial court on the ground that the plaintiff's remedy was limited to workers' compensation benefits. The plaintiff argued that Ensco should not be immune from tort liability because, in addition to its role as a joint venturer and employer, it occupied a second, or dual, capacity that conferred upon it obligations independent of those imposed upon it as an employer. Specifically, Landers argued that Ensco owned the property on which the joint venture did business, it was required to but failed to provide a barrel tilter (an implement required by federal safety regulations), and its employee was responsible for safety within the entire Ensco premises.

While not rejecting the dual persona concept, we concluded in *Landers* that the doctrine did not apply to the facts of that case. In fact, it is apparent that in the *Landers* case, we were really dealing with a dual capacity argument and not one founded on the dual persona theory. The plaintiff merely alleged that Ensco occupied a capacity or relationship in addition to that of joint venturer and employer. He could not establish that Ensco possessed a second persona completely independent from and unrelated to its status as an employer.

In contrast to *Landers*, the appellants in this case bring their action against Tyson not as Guy Thomas's employer, but as the successor corporation to Valmac. The appellants look to the Arkansas Business Corporation Act to establish liability on the part of Tyson. Ark. Code Ann. § 4-26-1005(b) (1987) provides that when a merger has been effected:

> (1)    The several corporations parties to the plan of merger or consolidation shall be a single corporation which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation . . . .
>
> (2)    Subject to § 4-26-1008, the separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease.
>
> *        *        *
>
> (6)    Such surviving or new corporation shall henceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated. Any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if the merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. . . .

The appellants contend that under the language of this statute, Tyson, as the surviving corporation, is responsible for any liabilities of Valmac, the merged corporation. We find that this is precisely the type of situation which calls for the application of the dual persona doctrine.

One of the first cases to embrace the dual persona theory was the decision of the Court of Appeals of New York in *Billy* v. *Consolidated Machine Tool Corp.*, 51 N.Y.2d 152, 412 N.E.2d 934, 432 N.Y.S.2d 879 (1980). In *Billy*, the plaintiff's decedent, an employee of USM Corporation, was killed when a 4,600 pound "ram" from a vertical boring mill broke loose and struck him. Although the decedent's widow applied for and received workers' compensation benefits, she also brought a tort action against USM Corporation, the parent corporation of USM and three other corporations which had been absorbed by USM through corporate mergers prior to the accident. USM moved for summary judgment on the basis of the exclusive remedy provision of New York's workers' compensation law. The lower courts agreed with USM that the exclusivity provision of the workers' compensation act barred the common law tort claim, but the Court of Appeals reversed.

After first rejecting the dual capacity doctrine, the *Billy* court adopted what is now known as the dual persona doctrine, reasoning that USM should not be permitted to avoid the obligations it inherited through corporate merger simply because of the "fortuity" that the injured party was its employee. The court went on to explain:

> Conceptually, the deceased employee's executrix is suing not the decedent's former employer, but rather the successor to the liabilities of the two alleged tortfeasors. That USM also happens to have been the injured party's employer is not of controlling significance, since the obligation upon which it is being sued arose not out of the employment relation, but rather out of an independent business transaction between USM and Farrel. . . .

> Through its merger with Consolidated and Farrel, USM voluntarily assumed any obligations that those corporations may have had to individuals who might suffer injury as a result of a defect in their product. It would be grossly inequitable to permit USM to avoid its assumed obligations solely because the injured party was coincidentally an employee and the injuries in question arose in the course of his employment. 51 N.Y.2d at 161-62, 412 N.E.2d at 940, 432 N.Y.S.2d at 884-85.

*Accord Robinson* v. *KFC National Management Co.*, 171 Ill. App. 3d 867, 525 N.E.2d 1028 (1988); *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 550 N.E.2d 127 (1990); and *Schweiner* v. *Hartford Accident & Indemnity Co.*, 120 Wis. 2d 344, 354 N.W.2d 767 (Ct. App. 1984).

This court believes the application of the dual persona doctrine is called for even more strongly here than it was in *Billy*. There, the merger of Consolidated and Farrel (the designer and installer, respectively, of the "ram" that killed the decedent) into USM occurred a number of years prior to the accident. Here, the merger of Valmac into Tyson, according to the unrefuted allegations in the plaintiffs' complaint, did not take place until May 25, 1988, one year after the accident. Thus, in this case, Guy Thomas clearly had a third-party claim against Valmac at the time he sustained his injury.

Tyson's argument centers around the assertion that, prior to his injury, Guy Thomas was an employee of Valmac. Tyson also maintains in its brief that in October of 1984, Tyson "acquired Valmac through a tender offer" and, shortly thereafter, "assumed responsibility and control of Valmac operations and Valmac employees, including Thomas, became Tyson employees." Thus, Tyson contends that even if it succeeded to any liability on the part of Valmac, it also succeeded to the immunity from suit which Valmac possessed as Mr. Thomas's employer.

■ The problem we have with this argument is that Tyson does not dispute the complaint's allegation that on May 13, 1987, the date of his injury, Guy Thomas was an employee of Tyson. Furthermore, Tyson offered no evidence, in the form of an affidavit or otherwise, to refute the allegation of the complaint that the merger of Valmac and Tyson occurred on May 25, 1988. Tyson's argument is based entirely upon statements contained in its brief. We have previously held that it is incorrect to base a decision on a motion to dismiss (or a motion for summary judgment) upon allegations contained in the parties' briefs. *Guthrie* v. *Tyson Foods, Inc.*, 285 Ark. 95, 685 S.W.2d 164 (1985). In this case, taking the unrefuted allegations of the complaint as true, Valmac was not Mr. Thomas's employer on the day of his injury. Consequently, Tyson had no immunity to inherit when the merger took place one year later.

■ In conclusion, we find that under the particular facts of this case, the exclusivity provisions of our Workers' Compensation Act do not bar the appellants from maintaining their tort action against Tyson Foods, Inc. Because the trial court does have jurisdiction of the subject matter of this action, and because the complaint on its face states facts upon which relief could be granted, we hold that the trial court erred in granting the motion to dismiss.

We would add that the appellants also asserted that the trial court may have treated the appellees' motion to dismiss as one for summary judgment pursuant to Ark. R. Civ. P. 56. The appellants submit that if the trial court did treat the motion to dismiss as one for summary judgment, it improperly dismissed the complaint because there were genuine issues of material fact. We do not find it necessary to reach this issue, inasmuch as we conclude that the trial court's ruling on the Rule 12(b)(1) and (b)(6) motion was in error.

Reversed.

HAYS, J., dissents.

BROWN, J., not participating.

STEELE HAYS, Justice, dissenting. The trial court granted a motion by Valmac Industries, Inc. and Tyson Foods, Inc., to dismiss for lack of jurisdiction and failure to state facts upon which relief could be granted. Ark. R. Civ. P. 12(b)(6). I would affirm on both counts.

The complaint names six defendants[1] and alleges that Guy Thomas "was injured while working on a trailer manufactured, distributed, sold, owned, and modified by the defendants . . . caused by the defective and unreasonably dangerous condition when sold and subsequently modified." Thomas further alleges that the defendants were negligent in failing to inspect the trailer, failing to instruct as to the proper and safe use of the trailer, failing to warn of the dangers in the use of the trailer, in placing the release handle in a position that it could not be operated safely

---

[1] S. & T. Manufacturing Co., Inc.; Steco Sales, Inc.; Saul Spector; Jacimore Metals, Inc.; Valmac Industries, Inc.; and Tyson Foods, Inc.

and in designing the center gate so that the gate could not be released safely.

Thus, the complaint alleges strict liability and negligence. The complaint does not state how the injury occurred or how the trailer was defective and unreasonably dangerous. It does not allege that either Valmac or Tyson manufactured or supplied the trailer within the context of the Arkansas Product Liability Act and clearly does not state a cause of action based on strict liability. As to the negligence counts, the complaint simply throws a blanket over six defendants with no attempt to differentiate as to their involvement or accountability. In more conventional litigation these generalities might be forgiven, but when exclusivity under workers' compensation is at stake, it is critical for the plaintiff to state *facts* which give rise to common law liability in tort. In *Johnson* v. *Houston General Insurance Company*, 259 Ark. 724, 536 S.W.2d 121 (1976), for example, an employee filed suit at law against his employer's carrier, alleging retaliatory conduct brought on by his having filed a workers' compensation claim. The complaint was dismissed by the trial court for failure to state a cause of action and this court affirmed, pointing out that the complaint failed to state *specific facts* constituting elements of actionable damage. How these several defendants can respond to these all-inclusive allegations other than by simply denying them is not apparent, and that meets neither the letter nor the spirit of fact pleading. Ark. R. Civ. P. 8; *Wilson* v. *Overturff*, 157 Ark. 385, 248 S.W. 898 (1923) ("The complaint must contain a statement in ordinary and concise language, without repetition, of *facts* constituting the plaintiff's cause of action . . . directly and positively alleged. . . .")

Of even greater importance is the failure to allege essential facts which would give a court of law jurisdiction over Valmac and Tyson in this particular case. Tyson was Thomas's employer at the time of his injury, which was suffered in performance of his duties. Tyson has paid to date in excess of $350,000 in workers' compensation benefits (a fact the majority opinion fails to mention). The majority places considerable reliance on a decision of the Court of Appeals of New York, *Billy* v. *Consolidated Machine Tool Corporation*, 51 N.Y.2d 152, 412 N.E.2d 934, 432 N.Y.S. 879 (1980), (to which two members of that court dissented). But essential factors on which the *Billy* court relied

are not present here, and that is a fatal defect in establishing both jurisdiction and a cause of action in this case. It is evident from the briefs that Thomas began working for Valmac in 1977 and later, at some undisclosed date, became the employee of Tyson. But the tort which the *Billy* court recognized was committed by a party which *"never had an employer-employee relationship* with the injured party." (My emphasis). Equally important, neither the complaint nor the briefs, so far as I can determine, state when the defect occurred. The significance of the latter date in establishing liability under the dual persona doctrine is stressed by Professor Larson in his analysis of the *Billy* case, because if it was while Thomas was *Valmac's* employee, then Tyson, as corporate successor to Valmac, also succeeded to Valmac's immunities under the business corporation act, on which the majority rely. *See* Ark. Code Ann. § 4-26-1005(b)(3).

Turning to the dual persona doctrine, I disagree that this court should adopt that theory as an exception to the rule of exclusivity under the workers' compensation law. The majority opinion ascribes greater support for the dual persona doctrine by Professor Larson than is borne out by the text itself. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 72.81 (1990). The text does recite that whereas the disfavored dual capacity approach should be "jetisoned," the dual persona approach *may* have legitimate application "in exceptional cases." One of the exceptional cases examined by Larson is *Billy* v. *Consolidated Machine Tool Corporation, supra,* which the majority now incorporates into the law of Arkansas. Larson makes particular note of two pertinent factors which were present in *Billy* but which are absent from our case—Billy had never worked for the predecessor corporation (Valmac's counterpart) and the defective equipment was manufactured *before* the merger. Thus, of two facts critical to the applicability of the dual persona view, at least one is missing from this case and perhaps both. Had these factors been present, according to Larson, the successor corporation in *Billy* could claim the inherited immunity of the predecessor corporation. Larson at 14-232.

From another angle, the issue in this case is whether the exclusivity provision of the Workers' Compensation Act is paramount to the third party liability provision. Today's holding subordinates the exclusivity provision, which I believe is central

to the act, to the third party liability provision, the end result being that the same employer, although having paid thus far $353,000 in workers' compensation benefits, is liable anew for unlimited damages at common law. In an analogous situation, where the right of contribution by a tortfeasor was asserted against the employer, necessitating a similar balancing, this court unanimously subordinated the joint-tortfeasor act to the Workers' Compensation Act. In *Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982), an AP&L lineman sued Bashlin for injuries attributable to a defective lineman's belt. Bashlin filed a third party complaint against AP&L for contribution as a joint tortfeasor. The trial court dismissed AP&L by summary judgment and we affirmed:

> The Uniform Contribution Among Tortfeasors Act and the Workers' Compensation Act are both involved in this action. One of them must give because both cannot prevail in the matter before us. Therefore, we hold that it is in the interest of public policy and in keeping with the intent of the General Assembly to give the compensation act priority as an exclusive remedy. In matters involving workers' compensation benefits the employer shall be immune from third party tortfeasors' claims.

Finally, I would cite language in the case of *McAlister v. Methodist Hospital of Memphis*, 550 S.W.2d 240 (Tenn. 1977). Tennessee's Workers' Compensation Act, like ours, provides that remedies under the act are exclusive of all other remedies and has a third party liability provision, (Section 50-914, T.C.A.) similar to our own Ark. Code Ann. § 11-9-410 (1987). While *McAlister* is a dual capacity case, implicit in the opinion is a disdain for concepts which defeat the aegis of exclusivity by constructing an alter ego for the employer:

> Nothing in Sec. 50-914, T.C.A. may be construed to evince a legislative intent that an employer may ever be classified as a "third person," without doing violence to the plain language which permits common law suits against "some person other than the employer." The employer is the employer; not some person other than the employer. It is that simple. The injured workman is confined to the benefits provided by the Workmen's Compensation Act

and may not sue his employer in tort.

I respectfully dissent to the reversal in this case.