Lenise **THOMEIER**, Permanent Plenary Guardian of the Person and the Estate of Stephen Thomeier, a totally incapacitated person, and Lenise Thomeier, Plaintiffs,

v.

**RHÔNE–POULENC, INC., Defendant.**

**Civil Action No. 95–274 Erie.**

United States District Court, W.D. Pennsylvania.

June 5, 1996.

Neil R. Rosen, Kapetan, Meyers, Rosen, Louik & Raizman, Pittsburgh, PA, for Lenise Thomeier.

Charles M. Tea, Kirkpatrick & Lockhart, Pittsburgh, PA, for Rhône–Poulenc, Inc.

## MEMORANDUM

McLAUGHLIN, District Judge.

The Defendant, Rhône–Poulenc, Inc. ("RPI"), has moved to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, this motion will be denied.

### I. BACKGROUND

Stephen Thomeier was severely injured on October 14, 1993 while working for RPI near Oil City, Pennsylvania. On July 15, 1994, Thomeier instituted an action in this Court against Rhône–Poulenc Specialty Chemicals Company ("Specialty"), Pennzoil Company, and Pennzoil Products Company. *See Thomeier v. Rhône–Poulenc Specialty Chemicals Co.*, Civ.Action No. 94–200 Erie (W.D.Pa.) (the "Specialty action"). As in this action, Thomeier sought to recover damages for his injuries,[1] and Lenise Thomeier sought to recover for her loss of consortium. Specialty was identified as the owner and possessor of the land on which Thomeier worked. RPI was not named as a defendant in the Specialty action, apparently because Thomeier believed that he would have been precluded under the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat. §§ 1 et seq. (the "WCA"), from recovering any damages from RPI. All parties agree that RPI was Thomeier's employer, as that term is defined in 77 Pa.Stat. § 21, at the time of the accident. The Specialty action remains pending before this Court and has been aggressively litigated by all parties.

Effective December 31, 1994, Specialty merged into RPI. Complaint at ¶ 7. In connection with this merger, RPI filed certificates of ownership and merger with the secretaries of state of New York and Delaware. *Id.* at ¶ 8; Ex. C to Plaintiff's Response to Defendant's Motion to Dismiss Complaint. In these documents, RPI's board of directors resolved, inter alia, "that this Corporation assume all of the obligations

---

1. Although Stephen Thomeier himself is not technically a party to this action, this Court will use "Thomeier" to represent both Stephen Thomeier personally and his and his wife's legal interests.

of Rhône–Poulenc Specialty Chemicals Co." Ex. C at C–3.

Thomeier asserts that, because RPI has become the successor to the interests, including the liabilities, of Specialty, RPI "is responsible for paying any judgment which Plaintiff may obtain against Specialty, and as a result, RPI must be named as a Defendant." Complaint at ¶ 9. Plaintiffs seek money damages.

## II. *STANDARD OF REVIEW*

 RPI's first argument is that this action must be dismissed under Fed.R.Civ.P. 12(b)(1) because this Court lacks subject matter jurisdiction.

Dismissal for lack of subject matter jurisdiction is not appropriate on the ground that a complaint fails to state a claim upon which relief can be granted, but only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons[, Inc. v. Delaware County, Pa.]*, 983 F.2d [1277,] 1280–81 [ (3d Cir.1993) ] (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)). "The threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is thus lower than that required to [with]stand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989).

*Bonnett Enterprises, Inc. v. United States*, 889 F.Supp. 208, 209–10 (W.D.Pa.1995). A plaintiff bears the burden of persuasion on a motion under Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

 RPI also argues that this action should be dismissed for failure to state a claim on which relief can be granted. On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The proper inquiry is "whether relief could be granted ... 'under any set of facts that could be proved consistent with the allegations.' " *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994)). If no cause of action can be identified, dismissal is proper.

## III. *DISCUSSION*

RPI raises a number of arguments in support of its motion. First, it asserts that, as Thomeier's employer at the time of the October 1993 accident, it is immune from suit under the Workmen's Compensation Act. Second, it submits that this action is not ripe. Third, it claims that the Complaint fails to plead the amount in controversy necessary to support the jurisdiction of this Court under 28 U.S.C. § 1332. Finally, it alleges that the Complaint fails to state a claim upon which relief can be granted.

The Complaint is ripe. It is susceptible of at least two readings:

1) that RPI will be liable to Thomeier for any judgment that he is able to obtain against Specialty; or

2) that RPI is liable to Thomeier for damages caused by Specialty's negligence because, pursuant to the merger, it has assumed Specialty's liabilities.

 On the first reading, RPI would be correct that this action does not present a ripe case or controversy for adjudication. Under Article III, Section 2 of the U.S. Constitution, the federal judicial power is limited to actual cases or controversies that arise within certain categories. *Travelers Insurance Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir.1995); *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir.1994). "[T]he courts will not decide a case where the claim involves 'contingent future events that may not occur as anticipated or indeed may not occur at all.' " *Binker v. Commonwealth of Pennsylvania*, 977 F.2d 738, 753 (3d Cir. 1992) (quoting 13A Charles Alan Wright et al., *Federal Practice and Procedure*, § 3532, at 112 (1984)). An effort to obtain money damages on the basis of a judgment that

does not now—and may never—exist would clearly not present a real case or controversy.

No similar problem exists with the second possible reading of the Complaint. Thomeier alleges that RPI is directly liable to him as a result of the negligence of Specialty. He further alleges that this liability arises because RPI is the successor-in-interest to Specialty. If these allegations are proven and no adequate defense is demonstrated, they could give Thomeier an immediate right to recover against RPI. Thus, the Complaint presents a ripe controversy.

RPI also alleges that this Court lacks subject-matter jurisdiction over Thomeier's claim because he has failed to plead the necessary amount in controversy. To establish jurisdiction under 28 U.S.C. § 1332 on the basis of diversity of citizenship, a plaintiff must plead that the amount in controversy exceeds $50,000. In his original Complaint, Thomeier alleged only that his damages exceeded $20,000. However, in the Amended Complaint, which was filed of right, see Fed. R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...."); *Centifanti v. Nix,* 865 F.2d 1422, 1431 n. 9 (3d Cir.1989) (motion to dismiss is not a responsive pleading), Thomeier has corrected this problem. Thus, the amount-in-controversy requirement has been met and is no bar to this Court's exercise of jurisdiction.

RPI also submits that this action should be dismissed because, even if this Court has jurisdiction over the subject matter, Thomeier cannot recover any damages. RPI notes that the WCA provides that worker's compensation benefits are ordinarily the exclusive remedy available to an employee—or his or her spouse—against his or her statutory employer for injuries sustained in the course of employment. 77 Pa.Stat. § 481(a). The company argues that, because it was Thomeier's statutory employer at the time of the accident, recovery is limited to the worker's compensation benefits that have already been received and that will be received in the future.

This is not a case in which RPI, as Thomeier's employer, has agreed in the certificate of merger to indemnify Specialty for any recovery against Specialty by RPI employees injured at work. All parties point to the provision of the WCA that allows an injured worker to sue a third party other than his employer:

> In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, *unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the cause of action.*

77 Pa.Stat. § 481(b) (emphasis added). The language of the certificate of merger lacks the clarity necessary to waive an employer's immunity from suit. To constitute an effective waiver, a contractual provision "must specifically provide that a named employer agrees to indemnify a named third party from liability for the acts of that party's negligence which cause harm to the named employer's employees." *Snare v. Ebensburg Power Co.,* 431 Pa.Super. 515, 637 A.2d 296, 298 (1993), *alloc. denied,* 538 Pa. 627, 646 A.2d 1181 (1994); *see also Scribner v. Mack Trucks, Inc.,* 860 F.Supp. 216, 217 (E.D.Pa. 1994); *Remas v. Duquesne Light Co.,* 371 Pa.Super. 183, 537 A.2d 881, 883 *alloc. denied,* 520 Pa. 597, 552 A.2d 251 (1988). The agreement to assume liabilities that appears on the face of the certificate of merger is general in its terms and does not specifically address RPI's or Specialty's potential liability under the WCA. Moreover, the WCA requires that an agreement to indemnify must pre-date the occurrence giving rise to liability. Here, however, Thomeier was in-

jured in October 1993, and the merger did not occur until December 1994. Thus, the certificate of merger does not meet the requirements of section 481(b).

Thomeier argues that the exclusivity provisions do not preclude this action because he seeks to sue on the basis of Specialty's alleged breach of its duty to him as a third party and, as a result of the merger, RPI has succeeded to Specialty's liabilities by operation of law.[2] He points out that he seeks to recover against RPI on the basis of the negligence of Specialty as a possessor of the land on which the Oil City facility was located, not on the basis of any negligence by RPI itself while it employed Thomeier. He concludes that this statutory successor liability controls over the exclusivity provisions of the WCA and that he should therefore be allowed to proceed with this action.

 As a federal court sitting in diversity, this Court must follow the law that would be applied by the Supreme Court of Pennsylvania. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, neither the parties nor this Court have located any decisions by the Pennsylvania Supreme Court or any other court in this state that addresses this issue.[3] Therefore, this Court must predict how the Pennsylvania Supreme Court would resolve

it. *U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co.,* 80 F.3d 90, 93 (3d Cir.1996); 19 Wright, *supra,* § 4507, at 89. "In so doing, a federal court may examine all existing resources, including Restatements, law reviews and well-reasoned authority from other jurisdictions." *Kolbeck v. General Motors Corp.,* 745 F.Supp. 288, 293 (E.D.Pa.1990) (citing *Kohr v. Raybestos–Manhattan, Inc.,* 522 F.Supp. 1070, 1074 (E.D.Pa.1981)).

Several courts in other jurisdictions have examined the issue of an employer's post-merger liability. *Compare Thomas v. Valmac Industries, Inc.,* 306 Ark. 228, 812 S.W.2d 673 (1991) (allowing suit to proceed); *Percy v. Falcon Fabricators, Inc.,* 584 So.2d 17 (Fla.Dist.Ct.App.1991) (same), *review dismissed,* 595 So.2d 556 (Fla.1992); *Robinson v. KFC National Management Co.,* 171 Ill. App.3d 867, 121 Ill.Dec. 721, 525 N.E.2d 1028 (same), *app. denied,* 122 Ill.2d 594, 125 Ill. Dec. 236, 530 N.E.2d 264 (1988); *Kimzey v. Interpace Corp., Inc.,* 10 Kan.App.2d 165, 694 P.2d 907 (1985) (same); *Gurry v. Cumberland Farms, Inc.,* 406 Mass. 615, 550 N.E.2d 127 (1990) (same); *Petrocco v. AT & T Teletype, Inc.,* 273 N.J.Super. 613, 642 A.2d 1072 (Law Div.1994) (same); *Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980) (same);

**2.** Each of the relevant states—New York, in which RPI is incorporated; Delaware, in which Specialty was incorporated prior to the merger; and Pennsylvania, the site of the events giving rise to this action—provides by statute that, following a merger, the surviving corporation assumes all liabilities of the constituent corporations. *See* Del.Code Ann. tit. 8, § 259(a) (1995); *id.* at § 261; N.Y.Bus.Corp.Law § 906(b)(3) (McKinney 1996); 15 Pa.Cons.Stat.Ann. § 1929(b) (1995).

**3.** This situation is distinguishable from efforts of injured Pennsylvania employees to recover under the "dual capacity" doctrine, which suggests "that the exclusivity principle might not apply where an employee is injured in circumstances in which the employer's relationship to the injury goes beyond that of mere employer." *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862, 868–69 (1988). *See, e.g., Heath v. Church's Fried Chicken, Inc.,* 519 Pa. 274, 546 A.2d 1120, 1120 (1988) (declining to allow action against employer as manufacturer of equipment with which employee worked); *Snyder v. Pocono Medical Center,* 440 Pa.Super. 606, 656 A.2d 534,

537 (declining to allow action against employer as provider of work-related medical care), *alloc. granted sub nom. Snyder v. Galozzo,* 543 Pa. 695, 670 A.2d 142 (1995). These cases have all involved claims that the employer itself was negligent towards the employee. They are therefore not determinative of the issue here, in which Thomeier claims that Thomeier's injuries were caused by the negligence of Specialty as a third party.

 *Green v. Sun Oil Co. of Pennsylvania,* 11 D. & C.3d 239 (C.P. Phila. County 1977) is not on point. In that case, the plaintiff was employed by Sun Oil of New Jersey prior to its 1971 merger with Sun Oil of Pennsylvania and by Sun Oil of Pennsylvania thereafter. He was injured on the job in 1974. *Id.* at 239–40. He then attempted to sue Sun Oil of Pennsylvania as the successor to Sun Oil of New Jersey. The court held that the action was precluded by the WCA because, but for the merger, the plaintiff would presumably have been employed by Sun Oil of New Jersey at the time of his injury. *Id.* at 242. In contrast, Steven Thomeier was never employed by Specialty.

*Schweiner v. Hartford Accident & Indemnity Co.*, 120 Wis.2d 344, 354 N.W.2d 767 (Ct. App.1984) (same) *with Caraccioli v. KFC Manufacturing Corp.*, 761 F.Supp. 119 (M.D.Fla.1991) (dismissing action); *Hatch v. Lido Co. of New England*, 609 A.2d 1155 (Me.1992) (same); *Davis v. Sinclair Refining Co.*, 704 S.W.2d 413 (Tex.Ct.App.1985) (same).

The opinion of the New York Court of Appeals in *Billy* is the leading case allowing an action against an employer to proceed under these circumstances. Billy's decedent, an employee of the defendant USM Corporation, was killed in the course of his employment in October 1976 when "a 4,600–pound 'ram' from a vertical boring mill broke loose and struck him." 432 N.Y.S.2d at 881, 412 N.E.2d at 937. The boring mill had been designed and manufactured by the defendants Consolidated Machine Tool Corporation and Farrel–Birmingham Company, and Farrel–Birmingham had installed the mill in 1955. Consolidated subsequently merged with Farrel–Birmingham, which, in turn, merged with USM in 1968. *Id.* at 881–83, 412 N.E.2d at 937–38. Billy collected worker's compensation benefits and filed suit against USM. The trial court granted the defendants' motion for summary judgment, and the intermediate appellate court affirmed. Both courts held that Billy's action was precluded by the exclusivity provision of New York's worker's compensation law. *Id.* at 881–82, 412 N.E.2d at 937.

The Court of Appeals held that the action should be allowed to continue. The court first rejected application of the "dual capacity" doctrine.[4] It then held that the action should be allowed to proceed under the related "dual persona" doctrine. It observed that the worker's compensation law clearly allowed an injured employee to maintain an action and recover against third parties whose negligence had caused his or her injury. *Id.* at 883–84, 412 N.E.2d at 939. But for the merger, the court noted, Consolidated Machine Tool and Farrel–Birmingham would have been subject to suit as third parties:

> Conceptually, the deceased employee's executrix is suing not the decedent's former employer, but rather the successor to the liabilities of the two alleged tortfeasors. That USM also happens to have been the injured party's employer is not of controlling significance, since the obligation on which it is being sued arose not out of the employment relation, but rather out of a business transaction between USM and Farrel. What distinguishes the case from the "dual capacity" cases discussed above is that here the tort in question was not committed by the employer or any of its agents; instead, the tort was committed by third parties, which, as it appears on the present record, never had an employer-employee relationship with the injured party. Since these third parties would have had no basis for invoking [the exclusivity provision] of the Workers' Compensation Law as a defense in a common-law action brought against them by the employee or his dependents, USM, which stands in their shoes with respect to the question of liability, should similarly not be permitted to do so.

*Id.* at 885, 412 N.E.2d at 940. The court remanded the action for further proceedings. *Id.* at 886–87, 412 N.E.2d at 942.

In reaching this conclusion, the Court of Appeals relied in large measure on the analysis of Professor Arthur Larson.[5] *See id.* at

---

4. *See supra* at n. 3. The *Billy* court observed that allowing an action to proceed on the basis of a dual capacity would undermine the policy trade-off made by the legislature in adopting the workers compensation statute:

> Employers are expected to provide their employees with a safe workplace that is reasonably free of hazards. This obligation to provide a safe workplace simply cannot be separated in a logical and orderly fashion from the duties owed by the employer to his employees by reason of his ownership of the premises or his manufacture of the equip-

ment with which the employees must work. Indeed, these duties are merely subcategories within the complex of obligations that arise in connection with the employment relationship.

432 N.Y.S.2d at 884, 412 N.E.2d at 939.

5. The Supreme Court of Pennsylvania has looked to Professor Larson's work in other contexts. *See, e.g., Globe Sec. Sys. Co. v. Workmen's Comp. Appeal Bd.*, 518 Pa. 544, 544 A.2d 953, 956–57 & n. 11 (1988) (citing 1A A. Larson, *Workmen's Compensation Law* § 36.22, at 6–145 (1985));

882–85, 412 N.E.2d at 938–40. Professor Larson was an outspoken critic of the "dual capacity" doctrine but argued that "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 72.81, at 14–290.88 (1995). "The question," Larson noted, "is not one of activity, or relationship—it is one of identity." *Id.* at 72.81(a), at 14–290.91. Larson cautioned that "if the dual persona doctrine is to apply it must be possible to say that the duty arose *solely* from the *nonemployer* persona." *Id.* at 72.81(c), at 14–290.109. He agreed, however, that this criterion was met in *Billy* and approved of the analysis and the result in that case and other cases in which the allegedly liable third party had merged with the employer. *Id.* at § 72.81(b) and nn. 13–14, at 14–290.94—14.290.100.

Other cases that have allowed actions to proceed have followed similar rationales. In *Gurry,* the plaintiffs' decedent Kevin Gurry was killed in January 1985 while operating a "sanding buggy" on a cranberry bog in the course of his employment. 550 N.E.2d at 129. Gurry had been hired in March 1984 by United Cranberry Growers Associates, Inc. ("United"), which then owned the bog in which Gurry was eventually killed. The sanding buggy had been built for United in 1983 at the direction and with the assistance of an officer of Cumberland Farms Dairy, Inc. ("Dairy"). It was owned by United. *Id.* Dairy provided administrative and managerial services to United for a regularly billed fee. United, Dairy, and other corporations were wholly-owned subsidiaries of Delaware Food Store, Inc. *Id.* In September 1984, United and Dairy merged with Delaware Food Store, which then merged with the defendant Cumberland Farms. *Id.* Thus, at the time of his death, Gurry was employed by Cumberland Farms. He had never worked for Dairy. *Id.* at 131.

The plaintiffs sued Cumberland Farms, alleging in part that Gurry's injuries had been caused by the negligence of United and Dairy in the design, manufacture, and maintenance of the buggy. *Id.* at 131. Cumberland Farms argued that, as Gurry's employer at the time of his death and as the successor to United, it was immune to the action under the exclusivity provision of Massachusetts's worker's compensation law. *Id.* at 130. The Supreme Judicial Court of Massachusetts held that the plaintiffs could proceed with their action against Cumberland Farms as the successor to Dairy. It expressly adopted the dual persona theory and observed that to bar suit "would subvert the important aims of both the workers' compensation system and the business corporation statute." *Id.* at 131. However, the court held, the plaintiffs could not continue against Cumberland Farms in its capacity as the successor to United because, as to that portion of the plaintiffs' claims, Cumberland Farms had also succeeded to United's immunity as Gurry's employer. *Id.*

In *Thomas,* the plaintiff was injured while working for the defendant Tyson Foods in May 1987. He alleged that his injuries were caused by the condition of a truck trailer that was owned by and had been modified by the defendant Valmac Industries. Valmac merged with Tyson in May 1988. 812 S.W.2d at 673. Thomas sued Valmac and named Tyson as the successor to Valmac's liabilities. The Arkansas Supreme Court adopted the dual persona doctrine and reversed the trial court's dismissal of the action. In so doing, the court cited to *Billy* and to Professor Larson's work. *Id.* at 675–76. It stated that the argument for application of the doctrine was stronger on the facts before it than in Billy, as the Valmac–Tyson merger did not occur until one year after the accident. *Id.* at 676. "Thomas," the court noted, "clearly had a third-party claim against Valmac at the time he sustained his injury." *Id.*

This Court predicts that, consistent with these cases, the Supreme Court of Pennsylvania would adopt the dual persona doctrine and hold that where, as here, a

*Lewis,* 538 A.2d at 867 (citing 2A Larson, *supra,* at § 65.11 (1987)).

person alleges that he or she has been injured in the course of his employment through the negligence of a third party and the third party has merged with the employer subsequent to the injury, an injured employee may proceed with an action against his employer in its personality of successor to the third party. The Pennsylvania Supreme Court has repeatedly noted in the context of awards of benefits that the WCA is remedial in nature and is intended to benefit workers. *Martin v. Workmen's Compensation Appeal Board,* 539 Pa. 442, 652 A.2d 1301, 1303 (1995); *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board,* 539 Pa. 322, 652 A.2d 797, 799 (1995). The WCA involves a trade-off:

> [The WCA] substitutes a relatively quick and inexpensive scheme to provide certain compensation for lost earnings, in place of the common law process under which any damages would be recoverable only after a suit against the appropriate parties, subject to available defenses and, of course, any expenses and delays inherent in the system. Under this scheme, employees are able to obtain compensation without regard to fault—either their own, that of a third party, or even the lack of fault on the part of the employer—while employers are subject to the payment of benefits at a set rate, receive immunity from being otherwise subjected to liability for damages, and have a right of subrogation to the extent of compensation paid in the event that a third party is held responsible for the injury.

*Hankee v. Wilkes–Barre/Scranton International Airport,* 532 Pa. 494, 616 A.2d 614, 617 (1992). Third parties are not part of this exchange. The WCA preserves the right of an injured worker to bring an action at law against a third party who would ordinarily be legally responsible for the worker's injuries. *Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609, 613 (1983).

The extension of the immunity of § 481(a) to preclude this action would be contrary to the remedial purpose of the WCA. It would give an acquiring employer in the position of RPI an additional benefit beyond those intended by the legislature. At the same time, it would deny the employee his legislatively recognized right to recover fully from a liable third party.

RPI is not immune from this action. Thomeier was injured on October 14, 1993. As of that date, Specialty had a corporate existence separate from that of RPI. Thomeier alleges that Specialty was the possessor of the land in Oil City and that Specialty breached the duty that it owed to him as a business invitee. Subsequent to the accident—and subsequent even to Thomeier's filing of this action—Specialty and RPI merged, and Specialty ceased to exist. Were RPI to be immune under these circumstances, Thomeier would be denied all access to potential benefits that the legislature intended him to have.

The courts in other states that have barred an employee's action have relied on several different rationales. In *Hatch,* the plaintiff was injured when fumes from an underground gas tank at his workplace leaked and caused an explosion. The tank had been installed by a previous occupant, which had subsequently merged into the plaintiff's employer. The plaintiff sued his employer as the successor to the previous occupant. 609 A.2d at 1156. Although it recognized a potential conflict with the law of other jurisdictions, the Supreme Judicial Court of Maine refused to allow the action to proceed. It observed that the duty that the predecessor was alleged to have breached—the duty to provide a safe workplace—was identical to the employer's duty under the workers compensation act. *Id.* at 1157. Absent some difference between the duty owed by the third party and the duty owed by the employer, the court held, the plaintiff had not alleged a separate persona and could not be allowed to proceed. *Id.*

The *Caraccioli* court, whose decision predated that of the Florida District Court of Appeal in *Percy* by seven weeks, briefly considered application of the dual persona doctrine but rejected it because no state court had yet accepted it. 761 F.Supp. at 122.

The *Davis* court, like the *Hatch* court, recognized that its decision was contrary to that of several other courts. 704 S.W.2d at 414–15. It pointed to the voluntary nature

of Texas's worker's compensation system[6] and the exclusive nature of the remedy once the system is accepted and reasoned that adherence to the exclusivity provision was reinforced by Texas's rejection of the "dual capacity" doctrine. *Id.* at 415. The court concluded "that the corporate merger statutes were not intended to be used to circumvent the clear public policy expressed in the Workers' Compensation Act." *Id.*[7]

The "dual persona" doctrine, as identified by Professor Larson and in *Billy* and its progeny, offers the better-reasoned approach. In contrast to the plaintiff in *Hatch,* Thomeier has alleged that Specialty breached a duty that it owed him independently of any duty owed him by RPI as his employer. Furthermore, unlike the *Davis* court, this Court believes that the interest in preserving the exclusivity of the remedy provided by the WCA is outweighed in this situation by the remedial nature of the WCA and the clear intent of the legislature that injured workers should be able to recover fully for their injuries from liable third parties. Moreover, the justification for allowing this action to proceed is stronger than was the justification in *Billy,* where the relevant mergers predated the employee's injury. *See Thomas,* 812 S.W.2d at 676.

Therefore, the motion to dismiss will be denied.

## IV. CONCLUSION

An appropriate order will follow.

### ORDER

AND NOW, this 5th day of June, 1996, for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Complaint [Doc. 5] is DENIED.

---

**6.** Although Pennsylvania's system was formerly voluntary, benefits under the WCA became the exclusive remedy against an employer for all injuries suffered by an employee in the course of his or her employment in 1974. *Lewis,* 538 A.2d at 866–67.

**7.** *Davis* was decided by a divided three-judge panel. The dissenting judge would have accepted the "dual persona" doctrine and found it applicable. *Davis,* 704 S.W.2d at 416 (Sears, J., dissenting). The judge pointed to Texas precedent that, on language similar to the merger documents before the *Davis* court, had found a valid agreement by an employer to indemnify the party that had sold the workplace to the employ-

er and was subsequently found liable in negligence to an employee. *Id.* at 418 (Sears, J., dissenting) (citing *American Petrofina, Inc. v. Dorchester Gas Corp.,* 685 S.W.2d 723 (Tex.App. 1985), *rev'd on other grounds,* 710 S.W.2d 541 (Tex.1986)). He argued that it was incongruous to allow recovery against an employer who had acquired property by purchase but deny it to an employer who had acquired the property by merger. *Id.* at 419 (Sears, J., dissenting). He also distinguished the "dual capacity" cases on which the majority relied and discussed with approval *Billy, Schweiner,* and *Kimzey* and the analysis of Professor Larson. *Id.* at 420–22 (Sears, J., dissenting).