**FOLASA UTU, Grandmother TEMU UTU, ESTATE of SAMUELU UTU, and ESTATE of SIBLINGS, Plaintiffs**

**v.**

**AMERICAN SAMOA GOVERNMENT and GALO ULUGALU, Defendants**

High Court of American Samoa
Trial Division

CA No. 83-90

February 24, 1992

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendant, Richard D. Lerner, Assistant Attorney
 General

Eleven-year-old Samuelu Utu died on May 25, 1989, as the result of injuries sustained from an accident involving a school bus owned and operated by the American Samoa Government (hereinafter "ASG"). The decedent is survived by his mother, grandmother, two brothers, and a sister. They have filed suit for wrongful death under A.S.C.A. §§ 43.5001 et seq. (hereinafter the "Act"), alleging actionable negligence on the part of ASG and its employee/driver Galo Ulugalu. ASG, on the other hand, claims that Samuelu himself was negligent and that his own negligence gave rise to his injuries. Alternatively, ASG argues that only the decedent's mother is entitled, as the "next of kin" (to the exclusion of the grandmother and siblings), to any recovery under the Act.[1]

From the evidence, we find that at all relevant times, Samuelu was a student at Tula Elementary school and that he travelled to and from school on an ASG-owned school bus. Since there were, at the time, more school children than available bus seats (ASG could only provide one bus to serve the needs of the Tula Elementary children), school bus officials allowed a number of acknowledged safety rules to be seriously compromised in an apparent effort to minimize the problem of

---

[1] A.S.C.A. § 43.5001(b) provides:

> An action for wrongful death must be brought on behalf of the surviving spouse, parents, children or other next of kin, if any, of the decedent as the court may direct, except that the deceased's legal representatives may recover, on behalf of the estate, the reasonable expenses of the deceased's last illness and burial.

stranded children. The Tula school bus was thus loaded beyond capacity,[2] even to the extent of allowing the children to ride on the doorway steps. Additionally, the particular vehicle involved had a faulty door which would not close, although the driver had previously reported this defect to his superiors.

On the day of the accident, Samuelu was one of those children riding homeward on the doorway steps. The testimony also revealed that when the bus stopped at each village to let off children, those riding in the doorway area, including Samuelu, would give way by getting off themselves, and then re-board again for the continuing journey home. When the bus reached Samuelu's village and as it neared its usual stopping place, the decedent, apparently anticipating that the bus would come to rest on the highway as it normally did, jumped off the bus while it was still in motion. Unfortunately the driver, who was unaware of Samuelu's actions, was at the same time making a sharp turn inland off the highway. In the process, Samuelu got caught under the bus' right set of rear wheels. He was immediately rushed to the hospital but died the following day, having sustained major injuries in the pelvic area.

On the evidence, we find negligence on the part of ASG to be abundantly clear. On the other hand, we see no basis for the claim of negligence on the part of the decedent. In terms of "proximate cause," we find that the real negligence behind Samuelu's conduct was the negligence of relevant school officials. They allowed an eleven-year-old boy to ride on the doorway steps with the door left open and to bound off and on the bus as it stopped at each village; they had thereby, in our view, effectively fostered in Samuelu a contempt for the dangers of the situation which was actually confronting him; they effectively instilled in him a false sense of security. Furthermore, if the door of the bus had been closed, as it should have been, the accident would never have occurred. We conclude that ASG is liable without contribution.

The next question then is who may benefit under the Act? According to ASG, neither the siblings nor the grandmother may benefit under the statute because the decedent left a surviving parent. As we understand ASG's argument, it is based on the contention that the phrase "next of kin," employed in the Act, A.S.C.A. § 43.5001(b), indicates an

---

[2] The supervisor for school buses spoke of departmental policy regarding a properly loaded bus as being three students to a seat with everyone seated.

order of exclusive priorities among potential beneficiaries and that qualified claimants in a given case can be determined by reference to the territory's inheritance laws. Otherwise, ASG argues, "[t]he possibilities [as to beneficiaries] would be endless." Defendant's Post-Trial Memorandum, at 6.

We have a number of problems with this submission. A construction of the Act as incorporating the statute of descent and distribution, A.S.C.A. §§ 40.0201 et seq., hardly seems justifiable when the Act by its very terms empowers the court to designate the beneficiaries of a wrongful death action. A.S.C.A. § 43.5001(b) ("[a]n action . . . must be brought on behalf of the surviving spouse, parents, children or other next of kin, if any, of the decedent as the court may direct . . . ." (emphasis added)). As noted in Semaia v. Hartford Fire Ins. Co., 6 Samoan Pacific L.J. 66, 73 (1980): "Among those designated classes of persons [listed in the statute], the court is at liberty to direct who shall be entitled to recovery." Similarly, in In re Estate of Ah Mai, 14 A.S.R.2d 32 (1990), the court, rejecting the notion of exclusive priorities among wrongful death claimants, observed that,

> [t]he class of beneficiaries encompassed within the term "next of kin" for wrongful death purposes does not appear to designate only those persons who are first in line to inherit the decedent's real or personal property; if it did, the phrase "as the court may direct" would be superfluous and possibly mischievous.

Id. at 35; see also Logoa'i v. South Pac. Island Airways, 6 A.S.R.2d 28, 29-30 (1987) (approval of distribution of settlement for wrongful death and survival actions sought by surviving spouse and children; this distribution, although disapproved for other reasons, repudiated the idea of exclusive priorities); Galo v. American Samoa Gov't, 10 A.S.R.2d 94 (1989); Continental Ins. Co. v. Ching Sam, CA No. 53-89 (1990).

In the context of surviving children, the court has also rejected this suggested reading of the Act on the reasoning that such a construction "would lead to absurd and unjust consequences." Saufo'i v. American Samoa Gov't, 16 A.S.R.2d 71, 75 (1990). The court expressed the concern that if an exclusive priorities requirement were read into the Act and "applied across the board, this construction would mean that a decedent's children could not recover if he had a parent living, since 'parents' are listed [in the Act] before 'children.'" Id.

56

Furthermore, ASG's thesis is in turn dependent on the assumption that, for purposes of inheritance, the applicable rule in the territory for determining "next of kin" is the "civil law rule" as opposed to the "common law rule."[3] The descent and distribution statute is silent on this issue, Ah Mai, supra, but even if ASG's position can be sustained, it would seem that at least for purposes of the Act, the court has consistently applied the common law rule to determine who was next of kin. The long-standing practice in the territory has been to allow brothers and sisters to recover along with parents in wrongful death cases. Saufo'i v. American Samoa Gov't, 14 A.S.R.2d 51, 52 (1990) ("Practice in the High Court has been to include brothers and sisters along with parents as plaintiffs in wrongful death actions where the decedent has left no surviving spouse or descendants."); Saufo'i, supra, 16 A.S.R.2d at 75 ("We believe that siblings are ordinarily entitled to recover for wrongful death even though a parent may be living, provided that they can show the requisite injury."); Ah Mai, supra, 14 A.S.R.2d at 35 ("Whether or not a decedent's brothers and sisters are as closely related to him as his parents for inheritance purposes, they have frequently been allowed to recover along with parents in wrongful death actions.") (citing Galo v. American Samoa Gov't, 10 A.S.R.2d 94 (1989) and Continental Ins. Co. v. Ching-Sam, CA No. 53-89 (1990)); Galo v. American Samoa Gov't, 10 A.S.R.2d 94, 97 (1989) ("we believe that the parents are entitled to a larger share than the [siblings] . . . because they are likely to have suffered more by [the decedent's] death" (emphasis added)).

We see no good reason to depart from the court's prior treatment and interpretation of the Act allowing brothers and sisters with "requisite injury," Saufo'i v. American Samoa Gov't, supra, 16 A.S.R.2d at 75, to recover along with their parents. This approach is consistent with that of "other jurisdictions whose wrongful death statutes limit recovery to the 'next of kin.'" Ah Mai, supra, 14 A.S.R.2d at 35 (citing Fountain v. Chicago, R.I. & P. Ry. Co., 422 S.W.2d 878 (Ark.

---

[3] According to the civil law rule, the mother is one degree from the decedent while the siblings and grandmother are two. See Ah Mai, supra. In contrast, the common law rule has both the mother and siblings one degree from the decedent, while the grandmother is two. Id. Thus under the civil law rule, only the mother would qualify as the "next of kin," while under the common law rule, both the mother and the siblings would qualify; the grandmother would never qualify as the next of kin so long as the mother is still alive.

1968); Crystal v. Hubbard, 324 N.W.2d 869 (Mich. 1982); Karr v. Sixt, 67 N.E.2d 331 (Ohio 1946); Annotation, Brothers and Sisters of Deceased as Beneficiaries Within State Wrongful Death Statute, 31 A.L.R.3d 379, 390-95 (1970)).

With regard to the grandmother's claim, the case which she has presented to establish entitlement under the Act is primarily framed on the contention that she was in certain respects standing in loco parentis vis-a-vis the decedent. Thus she seeks not only damages for loss of society and companionship under A.S.C.A. § 43.5001(c)(1), but also damages for loss of filial care and attention under A.S.C.A. § 43.5001(c)(3). Counsel for the grandmother invites us to view her situation within "the context of Samoan families." Defendants' Memorandum on "Siblings and Grandmother's Standing to Pursue Wrongful Death Action," at 3.

We exercise our discretion, given us by A.S.C.A. § 43.5001(b), against allowing this claim. It is in essence no different from the claim being made by the decedent's mother; they both seek the statutory remedy which the legislature had fashioned with surviving "parents" in mind. In our opinion, the Act does not envisage granting relief to every relative who can claim some parental role in the decedent's lifetime while there are surviving parents with compensable loss. Otherwise, the idea of "endless possibilities," alluded to by ASG, would indeed become very much apparent when viewed against the realities of a Samoan extended household. Furthermore, if we allowed the grandmother to benefit under the Act in her own right, we would necessarily be reading the Act so as to allow recovery for every relative who has a claim to "loss of love and affection." A.S.C.A. § 43.5001(c). That is clearly not the purport of the Act.

The complaint also alludes to "severe physical and emotional pain" suffered by the decedent. The Act, A.S.C.A. § 43.5002, provides for a survival action which may be brought by the decedent's representative. However, ASG argues that this cause of action was not pled by plaintiffs, who had only filed for recovery under the wrongful death statute, A.S.C.A. § 43.5001, and that the pain and suffering referenced in the complaint is not a recoverable item of damages under the wrongful death statute, A.S.C.A. § 43.5001. Although the pleadings leave something to be desired, we think that the complaint sufficiently notices a cause of action under the survival statute as well. The complaint not only refers to plaintiff Folasa Utu as being the decedent's personal representative, but it also alludes to pain and suffering, as well

58

as praying for damages, for the "physical and emotional distress" suffered by the child before he died. In light of the liberal rules of pleading, ASG's protest that the complaint omits to specifically mention the survival statute fails to impress. See Fa'avae v. American Samoa Power Auth., 5 A.S.R.2d 53, 58 (1987); Tevaseu v. American Samoa Gov't, 5 A.S.R.2d 10, 12 (1987). Not only are we satisfied that a case has been stated under the survival statute, we find from the testimony of Dr. Vaiula Tuato'o that the decedent endured great pain and suffering subsequent to his injuries.

We turn to the question of damages. The Act provides for damages as the court considers "fair and just compensation with reference to pecuniary injury and loss of love and affection, including . . . loss of society, companionship, comfort, consortium, or protection; [and] loss of filial care and attention." A.S.C.A. § 43.5001(c). Additionally, the Act allows the decedent's estate to recover "reasonable expenses of [the decedent's] last illness and burial." A.S.C.A. § 43.5001(b).

Although Samuelu was only a very young lad at the time of his death, he had played a very significant role within his family. Despite his eleven years of age, he was the senior male member of his household. With his mother working as the family's breadwinner, he was very much involved with his elderly grandmother in the day-to-day requirements of the household. The grandmother, with the onset of age, was in turn very much dependent on the decedent and she referred to her grandson as having been her right hand. The decedent's various duties included looking after his younger siblings, purchasing groceries, paying the bills, and assisting in the preparation of meals as well as the family's customary obligations towards the matai and faifeau (the village pastor). Finally, as the eldest male member of a matriarchal household, the role of provider would have naturally devolved upon the decedent.

With these considerations in mind, we assess the mother's damages for loss of society, companionship, comfort, and possible future support, care, and attention, at $20,000. We assess damages for the surviving siblings, for loss of society, companionship, comfort, and protection, in the sum of $6,000 to be distributed equally among them. The estate's claim for funeral expenses is denied for lack of showing. For the decedent's pain and suffering we award the sum of $5,000 payable to the decedent's personal representative for distribution according to the statute of descent and distribution, A.S.C.A. § 40.0201.

Judgment will enter accordingly.

It is so ordered.