MARTHA FOUNTAIN, ADM'X *v.* CHICAGO, R. I. & P. RY. ET AL

5-4410                           422 S. W. 2d 878

Opinion delivered January 22, 1968

*James C. Call,* for appellant.

*Wright, Lindsey & Jennings* and *William R. Overton,* for appellees.

LYLE BROWN, Justice. This is a wrongful death case brought by appellant, Martha Fountain, Administratrix

of the Estate of Johnnie O. Thompson, deceased. Appellees, Chicago, Rock Island & Pacific Railway Company, and its employee, successfully moved to strike all claims for pecuniary benefits and mental anguish. Thompson was survived by his mother and several brothers and sisters. The principal ruling of the trial court here attacked is that the death of the mother, which shortly followed the fatal accident to her son, extinguished any possible recovery for mental anguish.

Johnnie O. Thompson, 54 and single, was employed by Magnet Cove Barium Corporation. While unloading ore from a Rock Island car, he was struck by a metal crank attached to the car and alleged to be defective. The injury proved fatal. Suit was brought by the administratrix. The elements of damage alleged were: (1) pecuniary benefits for Thompson's dependent mother and sister, ages 87 and 62 years, who lived in his household; (2) mental anguish suffered by the mother and sister, as well as other brothers and sisters not members of his household; and (3) expenditures by the estate.

The defendants moved to strike those elements of recovery described in (1) and (2) and alleged: (a) at the time of Thompson's death, his mother was the only "heir and next of kin" within the meaning of the wrongful death statute; (b) that shortly after the fatal accident and before suit was filed, the mother died and her cause of action abated; (c) that Thompson did not stand in loco parentis to the mother and sister of his household; and (d) that the brothers and sisters were not entitled to recover for mental anguish. The trial court sustained the motion to strike and left only the claim for the benefit of the estate to be litigated.

First, we dispose of the contention of the administratrix that pecuniary loss to, and mental anguish of, the mother are proper elements of recovery. Those rights abated with the death of the mother. *Jenkins,*

*Admr.* v. *Midland Valley R. R.,* 134 Ark. 1, 203 S. W. 1 (1918).

We next consider that point of the administratrix which, in substance, asks us to overrule, in part, *Peugh* v. *Oliger, Admx.,* 233 Ark. 281, 345 S. W. 2d 610 (1961). With reference to recovery for mental anguish, *Peugh* holds recovery to be limited to the enumerated relatives who are *also heirs at law.*

Decisions from other jurisdictions are of no aid because their statutes allowing mental anguish are distinctly different from our Act 255 of 1957 (Ark. Stat. Ann. §§ 27-906-10 [Repl. 1962]). The significant difference is that, for the most part, other statutes list the relatives in classes, with the priority of each class established. We do point out that our Act 255 was originally drafted by a committee of the Arkansas Bar Association and was adopted with some modification by the Legislature. There was available to that committee the statutes of those states which then allowed recovery for mental anguish. Nevertheless, the bar committee elected to place the beneficiaries in a single group. That fact is of some significance in determining legislative intent.

In analyzing Act 255 we find these three points persuasive:

(1)  The Legislature listed all beneficiaries in a single group, specifying no priority of one beneficiary over the other.;

(2)  The interpretation in *Peugh* v. *Oliger* does not allow all the named beneficiaries to recover for their mental anguish. That decision did treat a foster daughter as an *heir at law* for purposes of the mental anguish statute and permit her to recover. But in placing that daughter in the category of *next of kin* this court reversed a modest recovery for mental anguish awarded to a sister of the deceased. It was held that *both* could not recover. Mrs. Drake, the 71-year-old surviving sis-

ter of the deceased, according to the evidence, was so distraught that she required constant attention for a considerable time after the accident which was fatal to her only living sister. They had been close neighbors for forty years and saw each other almost daily. When they moved a short distance apart they saw each other weekly and talked on the telephone. The foster daughter had been married since 1934 and for several years immediately prior to her foster mother's death the foster daughter lived 165 miles distant. We have no quarrel with the allowance to the foster daughter, although that recovery was permitted by a novel construction of the statute. However, we think an interpretation of Act 255 which would deny recovery to Mrs. Drake is contrary to the intent of the Legislature. Her mental anguish could well have been as great, or greater, than that of the foster daughter.

The evidentiary situation just recited, as between Mrs. Drake and the foster daughter, leads us to a conclusion so well stated in 18 Ark. L. R. 166 (1964): "This provision has been narrowly construed by the Arkansas Supreme Court, however, so as to effectively prevent recovery for mental suffering in some cases. As a result, the mental anguish provision of the statute loses much of its vitality . . . . A more liberal approach to the wording of the statute would be consistent with the expressions of the legislature."

(3) Finally, we are persuaded by the reasoning in the dissenting opinion in *Peugh* and we hereby adopt that opinion by reference.

Reversed and remanded.

HARRIS, C. J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. While strong arguments can be, and were, advanced that the decision in *Peugh* v. *Oliger*, 233 Ark. 281, 345 S. W. 2d 610, was not correct, I dissent from the action of the ma-

jority because I do not believe that previous decisions construing a statute should be so lightly overruled. The *Peugh* decision was made in March of 1961. The General Assembly has met in three regular sessions since that time without changing Act 255 of 1957 [Ark. Stat. Ann. §§ 27-906—27-910 (Repl. 1962)], the statute allowing recovery for mental anguish in wrongful death cases. The construction of that statute by this court became a part of the law. In *Merchants' Transfer & Warehouse Co.* v. *Gates,* 180 Ark. 96, 21 S. W. 2d 406, this court said:

> "When the court construed the Act of 1927 in question, such construction became as much a part of the statute as if written in it."

Perhaps we can still have the necessary certainty, stability and predictability in our law without being shackled by an inflexible adherence to the doctrine of stare decisis. But I submit that when a statute meant one thing yesterday, it should not mean something else today. The overruling of this statutory construction seems to me to be a vehicle of injustice rather than justice. Who can say how many claims for mental anguish now recoverable under today's definition have become barred by the statute of limitations while this case has been pending? How many hundreds of claimants have been advised by their attorneys that they had no claim for damages for mental anguish in wrongful death cases since March 1961? How many dozens of times have circuit judges directed verdicts of non-liability for mental anguish damages or refused to submit mental anguish as an element of damages in cases tried before them since the decision in the *Peugh* case? There should be enough certainty and predictability of judicial action that litigants, attorneys and judges can act with a reasonable degree of assurance that they can rely on clear precedent. The alternative would clog our judicial system with an insurmountable burden. For example, a litigant could only be sure he is barred from a recovery by

pursuing a case to the court of last resort, an attorney could only indulge in rank speculation in advising a client and a trial judge might well resort to a system of *ad hoc* decisions applying the law as he might feel it ought to be in any particular case on any particular day.

Nothing has changed since March 20, 1961, the date of the prior decision, except the personnel of the court.

I repeat, we, as well as any trial court, or any litigant, should be bound by a definition of terms this court has given to the words of a statute, particularly when the law-making branch of the government has not attempted to correct or change that definition. Since the construction in *Peugh* v. *Oliger, supra,* became as much a part of the statute as if written into it, this court has acted legislatively in changing the meaning of its words.

I would affirm the judgment of the lower court.

I am authorized to state that Harris, C. J., joins in this dissent.