SECOND INJURY FUND v. RICELAND FOODS, INC.

CA 85-231                                      704 S.W.2d 635

Court of Appeals of Arkansas
En Banc
Opinion delivered February 19, 1986
[Rehearing denied March 26, 1986.]

*Thomas J. O'Hern*, for appellant.

*Friday, Eldredge & Clark*, by: *Barry E. Coplin*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a Workers' Compensation Commission decision holding the Second Injury Fund liable for all of claimant's disability in excess of the amount previously paid by the employer for a 15% permanent disability to the claimant's left leg.

The record reveals that in 1946 the claimant, Harry L. Brown, began working for the appellee, Riceland Foods. In 1955, he was critically injured when he inhaled toxic gas while performing his duties for Riceland. Although it was first thought that he would be unable to return to work, or even survive, he made a miraculous recovery and returned to work in April of 1956. However, he was left with several debilitating conditions including toxic hepatitis, and as a result, he was required to take heavy medication and eat a highly restricted diet. He did not file a workers' compensation claim for his injury and received no compensation for it, although the company did pay his medical bills and buy his medicine for several years. Over the years, claimant's physical condition gradually deteriorated, and by 1981, he was suffering from heart, liver and lung diseases and was in such a weakened condition that he had to use a walking cane.

In March 1981, while at work for Riceland, claimant fell and severely sprained his ankle. He was medically rated as having a 15% disability to the left leg below the knee and received compensation for that disability. At a hearing to determine

whether claimant was entitled to additional compensation, an administrative law judge found him totally and permanently disabled and held under the provisions of Ark. Stat. Ann. § 81-1313(i) (Supp. 1985), which is Section 4 of Act 290 of 1981, the payment of compensation for all disability in excess of the 15% previously paid by Riceland was the responsibility of the Second Injury Fund. That decision was affirmed by the full Commission.

On appeal to this court, the Fund argues that since all the claimant's injuries occurred while in the employ of Riceland, the Commission erred in finding that section 81-1313(i) applied. The Fund contends that this section of the compensation act was enacted by the Arkansas General Assembly to encourage the employment of handicapped workers by insuring that an employer would not be required to pay for a greater amount of disability than that which actually occurred during the time the employee was working for the employer. Riceland contends that, because section 81-1313(i) states in the second paragraph that it applies to *"all cases* of permanent disability or impairment where there has been a previous disability or impairment," it applies even in situations where the employee receives more than one injury while working for the same employer. However, the first sentence of section 81-1313(i) states:

> The Second Injury Fund established herein is a special fund designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred *while the worker was in his employment.* (Emphasis added.)

The administrative law judge, whose opinion the Commission adopted, based his finding of Second Injury Fund liability on paragraph three of the statute which provides:

> If the previous disability or impairment or disabilities or impairments whether from compensable injury or otherwise, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the actual anatomical impairment resulting from the last injury considered alone and of itself; . . . .

Although it is possible to make the interpretation made by the law judge and Commission, we do not think "previous disability or impairment" refers to a condition which occurred while in the employment of the second-injury employer. Obviously, if as provided in the very first sentence of the statute—the sentence stating the reason and purpose for the statute—the employer employing a handicapped worker is to be liable *only* for the disability or impairment that occurs when the worker sustains an injury during that employment, then it must follow that such employer will be liable for *all* the disability or impairment that occurs when the worker is injured while in that employment. We hold that the Second Injury Fund is not liable where all of the claimant's disability or impairment results from injuries occurring while in the employment of the same employer.

In addition to the language used in the second injury statute, as discussed above, we think it also proper to consider the following language used by the Arkansas Supreme Court in *Arkansas Workmen's Compensation Commission* v. *Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950):

> This fund, called the "Second Injury Fund," is a limited and restricted fund. . . . While Workmen's Compensation Acts are generally to be liberally construed the solvency of this special "Second Injury Fund" requires that the provisions and requirements thereof be fully and strictly complied with. . . . To hold otherwise would open this special fund to the point of insolvency and provide no benefit to those who do comply with its provisions and who are entitled to benefits thereunder.

And in this connection, we also take note that the last sentence of Ark. Stat. Ann. § 81-1348(a) (Supp. 1985), provides:

> If, on or after July 1, 1983, the balance in the Second Injury Trust Fund becomes insufficient to fully compensate those employees to whom it is obligated, payment shall be suspended until such time as the Second Injury Trust Fund is capable of meeting its obligations, . . . in no event shall there be an reverter of responsibility to the employer or carrier on or after July 1, 1983.

Riceland argues that employers will be encouraged to

dismiss disabled workers after they are injured on the job if we hold that the Fund is not liable when all of the claimant's disability results from injuries occurring while employed by the same employer. We are not convinced. In the first place, the Workers' Compensation Act itself contains sanctions against any employer who retaliates against an employee for filing a workers' compensation claim. *See* Ark. Stat. Ann. § 81-1335(b) (Repl. 1976). In addition, we think an employer is much more likely to retain an employee who has a good work record than to hire a new worker he knows nothing about. Furthermore, an injured worker who is dismissed because of his injury and has difficulty finding comparable work at comparable wages might be found to be totally disabled thus subjecting the employer at the time of injury to greater liability than otherwise. And, in any event, as we said in *Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985), and *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), it is not the purpose of the second injury statute to give a windfall or subsidy to employers who employ handicapped workers.

Riceland also points to the law judge's finding that claimant is permanently and totally disabled "as a result of his March 30, 1981, compensable injury, as well as his general physical condition," and argues that the 1955 injury was not a cause of claimant's additional disability. This argument overlooks the fact that the law judge's opinion, adopted by the Commission, contains the following language:

> [I]t is apparent from both the lay testimony and the medical evidence that claimant was substantially disabled or impaired as a result of a previous injury, as well as the deterioration of his general physical condition.

Finally, appellee argues that, if it alone is held liable for the claimant's disability, we must remand the case to the Commission to determine the extent of this liability because the Commission did not pass upon the employer's liability for disability over and above the 15% disability to claimant's left leg. We do not agree because the Commission *affirmed* and *adopted* the law judge's opinion. Therefore, the law judge's finding of total and permanent disability became a finding of the Commission. We affirm that finding, but reverse the finding that the Second

Injury Fund is liable for the payment of any part of the compensation due, and hold that payment of the compensation due is an obligation of appellee Riceland Foods, Inc.

Affirmed in part and reversed in part.

GLAZE and CLONINGER, JJ., dissent.

TOM GLAZE, Judge, dissenting. While I dissent from the majority opinion, I might mention one point upon which all of us can agree: The Second Injury Fund law (Fund law) is poorly worded, subject to more than one reasonable interpretation and is in desperate need of remedial legislation. Because the new Fund law is ambiguous in parts, the majority has devoted most of its attention to what it believes the General Assembly intended by the law's enactment. The basic, overall premise upon which I disagree with the majority's opinion is that I believe my colleagues have artifically placed handicapped workers into two unequal categories: One in which the employer is induced to *hire* the handicapped worker who previously incurred his or her injury while employed by another employer; and a second in which that same employer, who employs a worker who sustains his or her first injury while in that employment, is induced to *fire* that injured or handicapped employee in an attempt to avoid liability for a prospective second injury. Under the majority's interpretation of the new Fund law, the employer in the first category is relieved of liability for any greater disability or impairment than actually occurred while the employer employed the worker. The employer in the second category must pay for all the employee's claims because both of the employee's injuries were sustained when working for the same employer.

The majority court reasons that handicapped workers in the second category will not be terminated or released because the Workers' Compensation Act (Act) contains sanctions against any employer who retaliates against an employee for filing a claim. *See* Ark. Stat. Ann. § 81-1335(b) (Repl. 1976). Of course, no provisions of the Act compel an employer to retain or rehire an employee. Besides, the employee is still placed in the position of showing his dismissal was the result of filing a workers' compensation claim. The majority further reasons that an injured worker who is dismissed might be found, as a result of such disability, totally disabled. Again, the burden is the employee's to show total

disability and that burden is far greater, as we all know, than merely proving he or she was not retained after sustaining an injury.

To further support its interpretation of the new Fund law, the majority emphasizes the law was not intended to give a windfall or subsidy to employers who employ handicapped workers. I must totally disagree on this point since it is the employers themselves who contribute to the Fund. Through that Fund, the employers are sharing the risk for those employees' second injuries which meet the specific or narrow requirements set forth in Ark. Stat. Ann. § 81-1313(i) (Supp. 1985) as interpreted by our earlier decisions in *Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985) and *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985). In a companion case to the one here, *Second Injury Fund* v. *McCarver*, 17 Ark. App. 101, 704 S.W.2d 639 (1986), our Court's majority also infers the Fund might become insolvent if this Court adopts an interpretation of the Fund law that permits employers to seek Fund relief in instances where injured or handicapped workers sustain both the first and second injuries while with the same employer. The majority's inference is not based on any evidence before this Court, and while I believe the Fund's solvency might be a legitimate concern, I am of the opinion the General Assembly can and will address it if that concern becomes a reality. Under any circumstances, it is not this Court's role to presume the General Assembly will allow the Funds to deplete so that injured workers will be precluded from benefits. In any event, we should not decide the issues presented here based upon such policy decisions when such decisions are best left to a legislative body. In sum, I cannot agree with the underlying reasons for the majority's decision to treat differently the worker who sustained first and second injuries when employed by the same employer from the handicapped or injured worker who was employed by a second employer when the worker sustained a second injury.

Neither do I believe the statutory construction of the new Fund law dictates the result reached by the majority. Section 81-1313, as amended by Act 290 of 1981, governs the second injury sustained by appellant, Harry L. Brown, since Act 290 was effective March 3, 1981, and Brown's second injury occurred on

March 30, 1981. Act 290 is compiled as section (i) of § 81-1313; that section had been newly created by Act 253 of 1979. Section 1313(i) states in pertinent part:

> Commencing January 1, 1981, *all* cases of permanent disability or impairment where there has been previous disability or impairment shall be compensated as herein provided. (Emphasis supplied.)

* * *

From the foregoing language, § 81-1313(i) clearly governs all claims and second injury issues after January 1, 1981. It does not exempt or except claims based upon injuries in the same employment. Instead, same employment injuries are mentioned as follows in paragraphs (3) and (4) of § 1313(i):

> (3) If more than one (1) injury in the same employment causes concurrent temporary disabilities, weekly benefits shall be payable only for the longest and largest paying disability.

> (4) If more than one (1) injury in the same employment causes concurrent and consecutive permanent partial disability, weekly benefits for each subsequent disability shall not begin until the end of the compensation period for the prior disability.

In my opinion, § 1313(i) clearly covers and includes injuries in the same employment, and to accept the Fund's argument, adopted by the majority court, frustrates the true, underlying purpose of the Fund law which is to encourage employers to allow injured or handicapped workers to be employed.

Because I believe the Commission correctly determined the Fund's liability for Brown's disability, I would affirm.

CLONINGER, J., joins in this dissent.