STUCCO PLUS, INC. *v.* Donald ROSE and Second Injury Trust Fund

96-256                                                938 S.W.2d 556

Supreme Court of Arkansas
Opinion delivered February 17, 1997

---

[4] Stevens's name appeared on law firm stationery as a claims manager.

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *James A. Arnold II* and *E. Diane Graham*, for appellant.

*Lawrence W. Fitting, P.A.*, for appellee Donald Rose.

*Terry Pence*, for appellee Second Injury Fund.

DONALD L. CORBIN, Justice. ■ Appellant Stucco, Incorporated, appeals the decision of the Arkansas Workers' Compensation Commission holding that Stucco is liable for benefits to its employee, Appellee Donald Rose, at the total disability benefits rate, that the liability of Appellee Second Injury Trust Fund does not begin until Stucco's liability is paid out, and that Stucco is responsible for an attorney's fee on the difference between Rose's total disability benefits and permanent partial disability benefits. The Arkansas Court of Appeals affirmed the Commission's decision. *Stucco, Inc. v. Rose*, 52 Ark. App. 42, 914 S.W.2d 767 (1996). We granted Stucco's petition for review of that decision, which was decided by a tie vote. When we grant review follow-

ing a decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Maloy v. Suttgart Memorial Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). We find error in the Commission's decision and reverse and remand.

*Facts and Procedural History*

The facts of this case are not disputed. Rose sustained a work-related injury to his lower back on June 26, 1990. His healing period ended June 23, 1991. As a result of this injury, he sustained an anatomical impairment of 13% to the body as a whole. Rose had a preexisting disability or impairment which, when combined with the June 1990 injury, resulted in his total disability. The 13% impairment equates to a benefit period of 58.5 weeks. The maximum weekly rate for permanent partial disability benefits for Rose's June 1990 injury is $169.59. The maximum weekly rate for total disability benefits is $226.11.

Both Stucco and the Second Injury Trust Fund accepted Rose's claim as compensable and as governed by Ark. Code Ann. § 11-9-525(b)(5) (Repl. 1996). A dispute arose, however, concerning the rate at which Rose's benefits should be paid and by whom they should be paid. Stucco contended that it should only be liable for benefits for the 58.5 weeks at the permanent partial disability rate of $169.59 and that the Second Injury Trust Fund is liable for the difference between that rate and the total disability rate of $226.11. The Second Injury Trust Fund contended that its liability for Rose's total disability benefits did not begin until after Stucco paid the first 58.5 weeks at the total disability rate of $226.11.

The Administrative Law Judge found that Rose was entitled to receive benefits for his 13% impairment at the total disability rate of $226.11 beginning June 24, 1991. The Administrative Law Judge ordered Stucco to pay the 58.5 weeks of benefits at the permanent partial disability rate of $169.59 per week, and, at the conclusion of the 58.5 weeks, ordered the Second Injury Trust Fund to pay the difference between the total disability rate of $226.11 per week and the permanent partial disability rate of $169.59 per

week that accrued during the first 58.5 weeks. The Administrative Law Judge further ordered that, after the 58.5-week period, the Second Injury Trust Fund was to pay Rose benefits at the total disability rate of $226.11 until he is no longer disabled or dies.

The Administrative Law Judge determined that neither Stucco nor the Fund controverted Rose's claim for total disability benefits subsequent to the 58.5-week period, but that both Stucco and the Fund controverted Rose's claim to weekly benefits in excess of the permanent partial disability rate for the first 58.5 weeks. Accordingly, the Administrative Law Judge ordered the Fund to pay the maximum statutory attorney's fee based on the additional benefits found to be its liability. In addition, the Administrative Law Judge awarded Rose's attorney a fee of $500.00 to be paid by Rose.

The Second Injury Trust Fund appealed to the Commission, and Rose cross-appealed on the issue of controversion of total disability benefits after the 58.5 weeks. The Commission affirmed the Administrative Law Judge's finding that Rose was entitled to benefits at the total disability rate of $226.11, but reversed the finding that Stucco was responsible for the first 58.5 weeks at the permanent partial disability rate and ordered Stucco to pay at the total disability rate.

The Commission affirmed the Administrative Law Judge's finding that neither Stucco nor the Fund controverted the total disability benefits after the first 58.5 weeks, but reversed the Administrative Law Judge's determination that the Fund was liable for the fees to Rose's attorney based upon the difference between the two rates of benefits.

Stucco appealed the Commission's decision. Rose cross-appealed on the issue of controversion after the 58.5 week period. Rose has not pursued his cross-appeal in this court. Stucco presents two arguments for reversal of the Commission's decision. First, Stucco contends the Commission erred in holding that Stucco must pay Rose's benefits at the total disability rate. Second, Stucco contends the Commission erred in holding Stucco responsible for attorney's fees on the difference between Rose's

permanent partial disability rate and total disability rates. We find merit to both arguments and reverse and remand.

### Rate of Benefits

The very narrow issue presented is strictly a question of law. All parties agree that Rose is entitled to total disability benefits of $226.11 as a result of the combination of a preexisting injury and a later injury that Rose incurred in June 1990 while working for Stucco and that resulted in the 13% impairment rating. All parties agree that Second Injury Trust Fund liability is established. All parties agree that Stucco is responsible for paying Rose's benefits for the first 58.5 weeks due to the later injury. The question is how much of the $226.11 does the Workers' Compensation Act require Stucco to pay, all $226.11 or only $169.59 with the Second Injury Trust Fund then making up the difference. In other words, at what rate does the Workers' Compensation Act require Stucco to pay benefits during the 58.5 weeks, the permanent partial disability rate or the total disability rate?

Section 11-9-525 addresses total disability resulting from the combination of a preexisting injury and a later injury, and provides as follows:

> 11-9-525. Compensation for disability — Second injuries.
>
> (a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to ensure that an employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment.
>
> (2) The employee is to be fully protected in that the fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined.
>
> . . . .
>
> (b)(5) If the previous disability or impairment, whether from compensable injury or otherwise, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the actual anatomical

impairment resulting from the last injury considered alone and of itself. However, if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in §§ 11-9-501 — 11-9-506 for permanent total disability, then, in addition to the compensation for which the employer is liable and after the completion of payment of compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under §§ 11-9-501 — 11-9-506 out of the fund.

Section 11-9-525(b)(5) is at the heart of this dispute and is silent on the rate at which an employer's liability for benefits is to be determined. This silence is perhaps due to the fact that when the language at issue in this case was adopted by 1981 Ark. Acts 290, § 4, the rates for permanent partial disability and permanent total disability benefits were the same. Those rates became different pursuant to 1986 Ark. Acts 10, § 2.

The Commission applied section 11-9-525(b)(5) and held that Stucco must pay at the total disability rate for the 58.5-week period. In addition to section 11-9-525(b)(5), the Commission also relied on what it described as the public policy of protecting the Second Injury Trust Fund's solvency. The Commission's reasoning for its interpretation of section 11-9-525 was flawed, and its consideration of the Fund's solvency was misplaced.

The Commission reasoned that but for the June 1990 injury and the corresponding 13% disability, Rose would not be permanently disabled, and, therefore, Stucco should be responsible for 13% of the total disability. The Commission thus held that Stucco's share of Rose's benefits was $226.11, the total disability rate, for 58.5 weeks, the time period for Rose's permanent partial disability benefits. The Commission's "but for" reasoning is flawed because it completely disregards section 11-9-525(b)(5)'s requirement that when permanent total disability results from a previous injury combined with a last injury, "the employer at the time of the last injury shall be liable only for the actual anatomical impairment resulting from the last injury *considered alone and of itself.*" (Emphasis added.) The aforementioned "but for" reasoning by the Commission does not consider the last injury *alone and*

*of itself,* but includes the last injury *and its contribution to the total disability.* Section 11-9-525(b)(5) clearly and unambiguously prohibits such consideration of the total disability when determining the employer's liability for benefits.

The Commission also reasoned that Stucco would be receiving a windfall if the Fund were held liable for the difference. The Commission's "windfall" reasoning is also flawed. Stucco is not avoiding any liability for any injury that occurred when Rose was employed at Stucco. Likewise, the Fund is not liable for any injury that occurred when Rose was employed at Stucco. Therefore, Stucco does not gain anything, much less a windfall.

■ The Commission's reliance on what it called the public policy of protecting the solvency of the Fund is misplaced for several reasons. Initially, there is simply no evidence in this record of the Fund's solvency or insolvency, and therefore any concern in that regard is premature. *Mid-State Constr. Co. v. Second Injury Fund,* 295 Ark. 1, 746 S.W.2d 539 (1988). Moreover, in *Mid-State Constr. Co.* this court cited with approval Justice Newbern's dissent in *McCarver v. Second Injury Fund,* 289 Ark. 509, 715 S.W.2d 429 (1986), which pointed out that the court of appeals' reference to language from *Arkansas Workmen's Compensation Comm'n v. Sandy,* 217 Ark. 821, 233 S.W.2d 382 (1950) on consideration of the Fund's solvency came from the Commission and not from this court. Secondly, we note that the funding mechanisms provided for the Fund in 1950 by Ark. Stat. Ann. § 81-1313(f)(2)(iii) (Supp. 1949) were remarkably different from the current funding mechanisms provided in Ark. Code Ann. §§ 11-9-301 to -307 (Repl. 1996). This difference in funding sources underscores that any consideration of the Fund's solvency in this case is inappropriate. Finally, we note that, in the event the Fund becomes insolvent, the General Assembly has expressed an intent to provide claimants with arrearages once the Fund regains its solvency, without any possibility of reverter of responsibility for benefits to employers. Section 11-9-301(f).

■ The Second Injury Trust Fund relies on the second sentence of section 11-9-525(b)(5) and argues that the language "in addition to the compensation for which the employer is liable

and after the completion of payment of compensation by the employer," means that the Fund's liability does not begin until "after" the end of the 58.5 weeks, therefore Stucco must pay the total disability rate for the 58.5 weeks. The Second Injury Trust Fund maintains that the statute does not contemplate concurrent payments by an employer and the Fund. Such a constrained interpretation of a statute is not necessary when the language of the statute is clear and unambiguous, because we give the language of a clear and unambiguous statute its plain and ordinary meaning. *McGee v. Amorel Pub. Sch.*, 309 Ark. 59, 827 S.W.2d 137 (1992).

When a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *State v. Johnson*, 317 Ark. 226, 876 S.W.2d 577 (1994); *Southern Sur. Co. v. Dardanelle Rd. Improvement Dist. No. 1*, 169 Ark. 755, 276 S.W. 1014 (1925). It is clearly expressed in section 11-9-525 that the purpose of the Fund is to fully compensate an employee for his total injuries while simultaneously protecting employers from having to pay for injuries that did not occur while the employee was working for that employer. That the employer is not to be held liable for a greater disability than actually occurred while the worker was in that employer's employment is mentioned in the statute no less than four times. Moreover, the statute clearly and unambiguously provides for the Second Injury Trust Fund to make up the balance of the employee's total benefits and the employer's share when it states that the "fund pays the worker the *difference* between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined." (Emphasis added.)

In short, the Fund's argument in support of the Commission's interpretation of the statute is without merit. Section 11-9-525(b)(5)'s language simply does not prohibit payments from both an employer and the Fund within the same period. The words "in addition to" and "after" payment of the employer's liability do nothing more than signal the possibility that an employee who is totally disabled from more than one injury could receive benefits concurrently from both the employer and the Fund without violating the statutory maximum benefits for total disability. That the employer is not liable for the total disability rate is

patently clear from the use of the word "remainder" in the last clause of the subsection "the employee shall be paid the remainder of the compensation that would be due for permanent total disability . . . out of the fund."

We interpret section 11-9-525(b)(5) to mean that Stucco's liability for Rose's benefits is limited to the injury occurring in June 1990 considered alone and of itself, and therefore, Stucco's liability is at the permanent partial disability rate of $169.59 for 58.5 weeks. We further interpret section 11-9-525(b)(5) to mean that, after Stucco pays its weekly liability, the Fund must pay the balance of Rose's total disability benefits, or $56.52 per week for the 58.5 weeks. There is no dispute that the Fund is responsible for the full $226.11 per week thereafter.

*Attorney's Fees*

Stucco argues that the Commission's award of fees based upon Stucco's liability for benefits at the total disability rate should be reversed because Ark. Code Ann. § 11-9-715(a)(2)(B)(ii) (Repl. 1996) provides that attorney's fees "shall be allowed only on the amount of compensation controverted and awarded." This argument has merit.

Where an employer demonstrates that it is liable for only a portion of a worker's present disability within the meaning of Second Injury Fund legislation, attorney's fees due from the employer should only be computed upon the basis of the amount of the employer's liability for benefits, not upon the amount of total disability benefits. *Buckner v. Sparks Regional Medical Ctr.*, 32 Ark. App. 5, 794 S.W.2d 623 (1990); *Prier Brass v. Weller*, 23 Ark. App. 193, 745 S.W.2d 647 (1988). In short, an employer's liability for attorney's fees is limited to the amount of benefits awarded from injuries occurring while the worker was employed by that employer. Given our reversal of the Commission's decision of the amount of Stucco's liability for benefits, we also reverse the amount of attorney's fees assessed against Stucco.

The Commission's decision is reversed, and the case is remanded for entry of an order consistent with this opinion.