Alvie NELSON *v.* TIMBERLINE INTERNATIONAL, INC.;
Crum & Forster, Carrier;
and Second Injury Fund

97-439                                                964 S.W.2d 357

Supreme Court of Arkansas
Opinion delivered March 5, 1998

Barber, McCaskill, Jones & Hale, P.A., by: *Tim A. Cheatham*, for appellees-petitioners Timberline International, Inc., and Crum & Forster Commercial Insurance.

*Judy W. Rudd*, for appellee-respondent Second Injury Fund.

RAY THORNTON, Justice. Timberline International, Inc., and Crum & Forster Commercial Insurance, its workers' compensation carrier, appeal the decision of the Arkansas Workers' Compensation Commission holding that the Second Injury Trust Fund is not liable for the permanent disability benefits awarded to Alvie Nelson, a former employee of Timberline, because his present condition resulted from the cumulative effect of successive injuries he received while in the same employment. The Arkansas Court of Appeals affirmed the Commission's decision based on the authority of *McCarver v. Second Injury Fund*, 289 Ark. 509, 715 S.W.2d 429 (1986), and *Riceland Foods, Inc. v. Second Injury Fund*, 289 Ark. 528, 715 S.W.2d 432 (1986). *Nelson v. Timberline Int'l, Inc.*, 57 Ark. App. 34, 942 S.W.2d 260 (1997). We granted

review of the decision of the court of appeals pursuant to Ark. Sup. Ct. R. 1-2(f).

The primary issue is whether we should overrule *McCarver* and *Riceland Foods*, in which we affirmed decisions of the court of appeals interpreting Ark. Stat. Ann. § 81-1313(i) (Supp. 1985), now codified at Ark. Code Ann. § 11-9-525 (Repl. 1996), to mean that the Second Injury Trust Fund is not liable for wage-loss disability benefits resulting from the cumulative effect of successive injuries when the claimant sustains the injuries in the same employment. We are persuaded by a careful review of the *McCarver* and *Riceland Foods* decisions that they should be overruled.

The facts of this case are not disputed. In 1988, Alvie Nelson suffered a lower-back injury while working as a diesel mechanic for Timberline. He eventually underwent back surgery resulting in a permanent impairment rating of fifteen percent to the body as a whole. When he recovered, Nelson returned to work at Timberline where he performed lighter work as a mechanic for about six months before being placed in the parts department where he worked for a year or so. Nelson then returned to his job as a diesel mechanic, and, in March 1992, he suffered another lower-back injury, for which he underwent two surgeries. Nelson has not returned to work or attempted to return to work since the second back injury. A neurosurgeon assessed his permanent impairment from the 1992 injury to be an additional fifteen percent to the body as a whole.

Timberline accepted full responsibility for the payment of benefits for the permanent physical impairment resulting from Nelson's second injury. A hearing was held before an administrative law judge to determine the extent of Nelson's permanent disability and the liability for any wage-loss disability benefits in excess of Nelson's permanent physical impairment ratings. The judge found that Nelson was not permanently and totally disabled due to the March 1992 injury but that he had sustained wage-loss disability benefits of sixty percent. The judge also ruled that the Second Injury Trust Fund had no liability for these benefits.

Nelson appealed the administrative law judge's decision to the Workers' Compensation Commission, and Timberline cross-appealed, asserting that the Second Injury Trust Fund was liable for the wage-loss benefits over and above Nelson's permanent physical impairment rating. The Commission rejected Nelson's claim of permanent and total disability, but reversed in part, finding that Nelson had sustained a thirty percent impairment to his earning capacity in excess of his physical impairment rating. Furthermore, the Commission, citing our decisions in *McCarver* and *Riceland Foods*, affirmed the determination that the Second Injury Trust Fund had no liability for Nelson's wage-loss disability benefits because he sustained the second disabling injury while working for the same employer for whom he had worked when he suffered his first compensable injury.

Both parties appealed the Commission's decision to the court of appeals, which affirmed on both points. In its opinion, the court of appeals urged that the "same employer" defense, created by the court in *McCarver* and *Riceland Foods*, deserves our reconsideration. *Nelson*, 57 Ark. App. at 36, 942 S.W.2d at 261. Nelson did not file a petition asking us to review the court of appeals' determination that there was sufficient evidence to support the Commission's finding that he was not permanently and totally disabled; therefore, we do not address that determination. On May 5, 1997, we granted Timberline's and Crum & Forster's petition for review solely to determine whether we correctly interpreted Ark. Stat. Ann. § 81-1313(i), now codified at Ark. Code Ann. § 11-9-525, in *McCarver* and *Riceland Foods* to provide that the Second Injury Trust Fund is not liable for permanent disability benefits which exceed those directly related to a second injury in the same employment. When we grant review following a decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Stucco Plus, Inc. v. Rose*, 327 Ark. 314, 938 S.W.2d 556 (1997).

At the outset, we consider appellee's, the Second Injury Trust Fund, argument that principles of *stare decisis* militate against revisiting our prior decisions interpreting the liability of the Fund under the statute. We are mindful that under the doctrine of *stare decisis* we follow the previous decisions of this court

construing a statute. *Scarbough v. Cherokee Enterprises*, 306 Ark. 641, 816 S.W.2d 876 (1991); *Southwest Ark. Communications, Inc. v. Arrington*, 296 Ark. 141, 753 S.W.2d 267 (1988). In *Southwest Arkansas Communications, Inc.*, we considered the principle of *stare decisis* in the context of interpreting a constitutional provision and stated:

> A cardinal rule in dealing with constitutional provisions is that they should receive a consistent and uniform interpretation so that they shall not be taken to mean one thing at one time, and a different thing at another time. Certainly, when a constitutional provision or a statute has been construed, and that construction consistently followed for many years, such construction should not be changed.

*Id.* at 145, 753 S.W.2d at 269 (citing *O'Daniel v. Brunswick Balke Collender Co.*, 195 Ark. 669, 674, 113 S.W.2d 717, 719 (1938)). Nevertheless, as the United States Supreme Court has recognized, *stare decisis* has never been applied mechanically to prohibit over-ruling prior decisions that have determined the meaning of stat-utes. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, (1978). Indeed, this court has, on occasion, departed from a prior statutory interpretation. *See Fountain v. Chicago, R.I. & P. Ry.*, 243 Ark. 947, 422 S.W.2d 878 (1968). We believe the ultimate inquiry is whether there are compelling reasons for abandoning our prior judicial interpretation of the statute. As discussed below, upon review of the *McCarver* and *Riceland Foods* decisions, we conclude that compelling reasons exist to overturn them.

We also note that Ark. Code Ann. § 11-9-1001 (Repl. 1996) does not affect our ability to decide the issue before us. That stat-ute provides:

> When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so . . . . In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, *the extent to which any phys-ical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed*, those things shall be addressed by the General Assembly and should not be done by

administrative law judges, the Workers' Compensation Commission, or the courts.

(Emphasis added.)

■ This language does not preclude our review in this matter because we are not "liberalizing, broadening, or narrowing" the scope of the Workers' Compensation Act. In addressing the liability of the Second Injury Trust Fund for permanent disability benefits under the statute, the issue relates only to the allocation of responsibility for payment of those benefits. The claimant receives the same compensation regardless of who bears the liability. We are not changing the scope of the Workers' Compensation Act; rather, we are merely interpreting a statutory provision allocating responsibility for benefits, which is clearly a function of this court.

Prior to 1979, employers who employed previously impaired workers were obligated under Ark. Stat. Ann. § 81-1313(f)(1) (Repl. 1976) to pay benefits for permanent total disability in the event a new injury had the cumulative effect of causing such a permanent disability. That statute provided:

> If an employee receives a permanent injury after having previously sustained another permanent injury in the employ of the same employer, for which he is receiving compensation, compensation for the subsequent injury shall be paid for the healing period and permanent disability by extending the period and not by increasing the weekly amount. When the previous and subsequent injuries received result in permanent total disability, compensation shall be payable for permanent total disability as provided in Section 10(a) 81-1310 of this Act.

Ark. Stat. Ann. § 81-1313(f)(1). In order to clarify the provisions of the Arkansas workers' compensation law and to provide improved benefits for persons qualifying under the Act, the Arkansas General Assembly passed Act 290 of 1981, which significantly changed the laws relating to second injuries and repealed all laws in conflict with its provisions. Section 4 of Act 290 provides in pertinent part:

> Commencing January 1, 1981, all cases of permanent disabilities or impairment where there has been previous disabilities or

> impairments shall be compensated as herein provided. . . . If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage or disability or impairment caused by the combined disabilities or impairment is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, *the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no preexisting disability or impairment. After the compensation liability of the employer for the last injury, considered alone,* . . . has been determined . . . the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time of the last injury was sustained shall then be determined . . . and the degree or percentage of disability or impairment which existed prior to the last injury plus the disability of impairment resulting from the combined disability shall be determined and compensation for that balance, if any, shall be paid out of a special fund known as a Second Injury Fund provided for in Section 47 (Ark. Stats. 81-1348).

(Emphasis added.)

This language appears to reflect a clear legislative intent that any employer who employs a handicapped or disabled worker is responsible only for such actual anatomical impairment as may result from the last injury, and the Second Injury Trust Fund is obligated to provide compensation for any greater disability that may result from a combination of injuries.

In 1986, the court of appeals decided *Second Injury Fund v. Riceland*, 17 Ark. App. 104, 704 S.W.2d 635 (1986) and *Second Injury Fund v. McCarver*, 17 Ark. App. 101, 704 S.W.2d 639 (1986), in which the court of appeals interpreted Section 4 of Act 290 of 1981, now codified at Ark. Code Ann. § 11-9-525. We begin our analysis by reviewing those opinions to determine the basis upon which the court of appeals declined to apply the above quoted language to cover circumstances where the claimant sustained successive injuries during the same employment.

In those companion cases, the court of appeals reviewed and reversed decisions of the Workers' Compensation Commission finding that the Fund *was liable* for the permanent disability benefits of the individual claimants even though all the injuries occurred while in the same employment. We consider the rationale employed by the court of appeals in each case separately.

In *Riceland,* the court of appeals reviewed a decision in which the administrative law judge and the Commission had determined that the Second Injury Trust Fund was liable for the permanent disability benefits based on the following language contained in paragraph three of Act 290, now codified at Ark. Code Ann. § 11-9-525(b)(5):

> If the previous disability or impairment or disabilities or impairments whether from compensable injury or otherwise, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the actual anatomical impairment resulting from the last injury considered alone and of itself; . . . .

*Riceland,* 17 Ark. App. at 106, 704 S.W.2d at 636. On review, the court of appeals found the statute was ambiguous and stated that "although it is possible to make the interpretation made by the law judge and the Commission, we do not think 'previous disability or impairment' refers to a condition which occurred while in the employment of the second-injury employer." *Id.* at 107, 704 S.W.2d at 636. Instead, the court of appeals focused on general language contained in Ark. Stat. § 81-1313(i), now codified at Ark. Code Ann. 11-9-525(a)(1):

> The Second Injury Fund established herein is a special fund designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred *while the worker was in his employment.*

*Id.* at 106, 704 S.W.2d at 636 (emphasis in original). Based on this language, the court of appeals reasoned:

> [I]f . . . the employer employing a handicapped worker is to be liable *only* for the disability or impairment that occurs when the worker sustains an injury during that employment, then it must

follow that such employer will be liable for *all* the disability or impairment that occurs when the worker is injured while in that employment.

*Id.* at 107, 704 S.W.2d at 636 (emphasis in original).

■ The reasoning employed by the court of appeals in *Riceland* was both logically and legally flawed. It does not follow from the premise that the employer "is to be liable *only* for [injuries during an employment]," that the employer "will be liable for *all* [injuries during an employment.]" The establishment of the Second Injury Trust Fund was for the stated public purpose of encouraging employment of disabled or handicapped workers by assigning liabilities for some wage-loss consequences of a second injury to that Fund.

■ In *McCarver*, the court of appeals further reasoned that the Fund should not be liable for same employment injuries:

The legislature expressly stated that the purpose of the statute is to insure that an employer employing a handicapped worker will not be required to pay for a greater amount of the disability or impairment than that which the worker sustains while in the employment of that employer. Stretching the statute to require the Second Injury Fund to assume liability for part of the disability or impairment sustained by a handicapped worker while in an employer's employment relieves that employer of part of his statutory liability and grants him a windfall or subsidy. It was not, in our opinion, the legislature's intent to give employers that type of encouragement to hire or retain handicapped or injured workers.

*McCarver*, 17 Ark. App. at 103-04, 704 S.W.2d at 641. Contrary to the court of appeals' conclusion, if we interpret the Fund law to mean that an employer's liability is limited to the actual anatomical impairment resulting from the last injury, there is clearly no windfall to employers because it is the employers themselves who contribute to the Fund.

The court of appeals also inferred that the Fund could become insolvent if the statute was interpreted to allow employers to seek recovery from the Fund in instances where the employee sustained both injuries while employed by the same employer; therefore, the court of appeals reasoned that the solvency of the

Fund required the application of what has become known as the "same employer" defense. *Riceland*, 17 Ark. App. at 107, 704 S.W.2d at 637; *McCarver*, 17 Ark. App. at 103, 704 S.W.2d at 641.

Our recent holding in *Stucco Plus v. Rose*, 327 Ark. 314, 938 S.W.2d 556 (1997) points out the faulty reasoning in *McCarver* and *Riceland Foods*. In *Stucco Plus*, we rejected an argument of the Workers' Compensation Commission concerning the solvency of the Second Injury Trust Fund. In holding that the Commission's reliance on protecting the solvency of the Fund was misplaced, we stated:

> [I]n *Mid-State Constr. Co.* this court cited with approval Justice Newbern's dissent in *McCarver v. Second Injury Fund*, 289 Ark. 509, 715 S.W.2d 429 (1986), which pointed out that the court of appeals' reference to language from *Arkansas Workmen's Compensation Comm'n v. Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950) on consideration of the Fund's solvency came from the Commission and not from this court. Secondly, we note that the funding mechanisms provided for the Fund in 1950 by Ark. Stat. Ann. § 81-1313(f)(2)(iii) (Supp. 1949) were remarkably different from the current funding mechanisms provided in Ark. Code Ann. §§ 11-9-301 to -307 (Repl. 1996). This difference in funding sources underscores that any considerations of the Fund's solvency in this case is inappropriate. Finally, we note that, in the event the Fund becomes insolvent, the General Assembly has expressed an intent to provide claimants with arrearage once the Fund regains its solvency, without any possibility of reverter of responsibility for benefits to employers. Section 11-9-301(f).

*Stucco Plus*, 327 Ark. at 321, 938 S.W.2d at 559-60.

In 1986, we reviewed the decisions rendered by the court of appeals in *McCarver* and *Riceland Foods*. In our review, we affirmed the decisions of the court of appeals without fully addressing the rationale employed by that court in reaching its decisions, and we concluded:

> If successive injuries in the same employment cause total and permanent disability the employer or his insurance carrier is responsible to the employee for all benefits. If the previous disa-

bility or impairment did not arise out of the employment by the same employer, the Second Injury Fund must pay the benefits.

*Riceland Foods*, 289 Ark. at 531, 715 S.W.2d at 435.

The question before us now is whether this determination of the Second Injury Trust Fund's limited liability under the *Riceland* and *McCarver* decisions was correct. We begin our reconsideration by noting that the statutory language at issue is ambiguous; we must therefore interpret it using the tools of statutory construction. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning. *Vanderpool v. Fidelity & Cas. Inc. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). The basic rule of statutory construction, to which all other interpretative guides must yield, is to give effect to the intent of the legislature. *Graham v. Forrest City Housing Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991). In attempting to ascertain legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, legislative history, and other appropriate matters that shed light on the matter. *Board of Trustees v. Stodola*, 328 Ark. 194, 942 S.W.2d 255 (1997).

We recently explained the legislative intent in the establishment of the Second Injury Trust Fund law as follows:

> It is clearly expressed in section 11-9-525 that the purpose of the Fund is to fully compensate an employee for his total injuries while simultaneously protecting employers from having to pay for injuries that did not occur while the employee was working for that employer . . . . Moreover, the statute clearly and unambiguously provides for the Second Injury Trust Fund to make up the balance of the employees total benefits and the employer's share when it states that the "fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined."

*Stucco Plus*, 327 Ark. at 322, 938 S.W.2d at 560.

In light of the legislative intent, we examine again the judicial analysis used to reach the results of *McCarver* and *Riceland*. Based upon the flawed logic and incorrect assumptions regarding

the solvency of the fund and a potential windfall to employers, which buttressed those opinions, we conclude that *McCarver* and *Riceland Foods* were wrongly decided. It remains for us to exercise our authority and responsibility to overrule those cases if a compelling reason exists for doing so. Such a compelling reason was recently articulated in *Mid-State Construction Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988). In *Mid-State Construction*, we reviewed an unpublished decision by the court of appeals that determined the Second Injury Trust Fund had no liability for the wage-loss benefits that resulted from the combination of a prior nonwork related impairment and a compensable injury. The court of appeals held that the employer and its carrier were liable for the full disability. In reversing that decision, we wrote the following regarding the result reached by the court of appeals:

> That result impermissibly distinguishes between two types of handicapped persons, contravenes the statutory scheme which makes employers liable only for the "degree of percentage of disability or impairment which would have resulted from the [r ecent compensable] injury had there been no preexisting disability or impairment," and defeats the purpose of the Fund to encourage the hiring of the handicapped.

*Mid-State Constr. Co.*, 295 Ark. at 8, 746 S.W.2d at 543.

We also note that the legislative intent to make available employment opportunities for injured workers is a more significant public policy consideration than the determination of which of two privately funded providers of compensation benefits shall be responsible for payment of wage-loss disability benefits. Our reinterpretation of ambiguous statutory language to give effect to the legislative intent merely reallocates responsibility for payment of claims by requiring that the cost of additional wage-loss benefits, beyond the actual anatomical impairment resulting from the second injury, is to be borne by the Second Injury Trust Fund.

The requirement that the risk of employing an injured worker should be spread over the entire pool of employers is so fair and reasonable that it is apparently followed in every other jurisdiction that has a second injury fund law. *See, e.g., Second Injury Fund v. Hodgins*, 461 N.W.2d 454 (Iowa 1990); *Denton v.*

*Sunflower Elec. Coop.*, 740 P.2d 98 (Kan. App. 2d 1987); *Estep v. State Workmen's Compensation Comm'n*, 298 S.E.2d 142 (W.Va. 1982). We are unaware of any cases to the contrary.

■ As a result of our determination that Act 290 of 1981 must be reinterpreted to give effect to legislative intent, we also consider whether an earlier statute, Ark. Stat. Ann. § 81-1313(f)(1) (Repl. 1976), remains effective. In *Riceland*, we noted that while Act 290 contained a clause repealing all provisions of law contrary to Act 290, Ark. Stat. Ann. § 81-1313(f)(1) was not inconsistent with Act 290 and need not be considered repealed by implication. *Riceland*, 289 Ark. at 532, 715 S.W.2d at 434. With the interpretation of Act 290 we adopt today, it is clear that Ark. Stat. Ann. § 81-1313(f)(1) is in conflict with Act 290, and accordingly is deemed repealed by implication by Act 290 from the time of this decision.

■ We conclude that our interpretation of Act 290 in *McCarver* and *Riceland Foods* was wrong and that it defeats the purpose of encouraging employers to retain employees with disabilities or impairments resulting from a prior injury in the same employment, in contravention of legislative intent. This is a compelling reason for overruling those decisions.

For the reasons stated, we reverse the Commission's decision and remand for further proceedings consistent with this opinion.

GLAZE, J., concurs.

CORBIN and IMBER, JJ., dissent.

TOM GLAZE, Justice, concurring. The dissenting opinion correctly sets out this court's sound principles bearing on *stare decisis*, and I certainly do not take issue with them. This court has and continues to follow those rules, but it should not do so blindly. As the majority opinion says, *stare decisis* has never been applied mechanically to prohibit overruling prior decisions that have determined the meaning of statutes.

Only recently, this court dealt with the Second Injury Fund in the case of *Stucco Plus, Inc. v. Rose*, 327 Ark. 314, 938 S.W.2d 556 (1997), where we held the Worker's Compensation Commis-

sion erred in relying on the Commission's public policy to protect the solvency of the Fund. In so holding, the *Stucco Plus* case stood at odds with this court's earlier cases of *Riceland Foods, Inc. v. Second Injury Fund*, 289 Ark. 528, 715 S.W.2d 432 (1986), and *McCarver v. Second Injury Fund*, 289 Ark. 509, 715 S.W.2d 428 (1986).

The *Riceland Foods* and *McCarver* cases were reviews of court of appeals' decisions which were infected with the court of appeals' belief that the solvency of the Second Injury Fund required the Fund law provisions to be strictly complied with. *See Second Injury Fund v. McCarver*, 17 Ark. App. 101, 704 S.W.2d 639 (1986); *Second Injury Fund v. Riceland Foods, Inc.*, 17 Ark. App. 104, 704 S.W.2d 635 (1986). In short, the court of appeals inferred that the Fund might become insolvent, if the court adopted an interpretation of the Fund law that permitted employers to seek Fund relief in instances where the injured or handicapped workers sustain both the first and second injuries while with the same employer. *See*, Glaze, J., dissenting, *Riceland Foods, Inc.*, 17 Ark. App. at 100. Unfortunately, this court in its review of *Riceland Foods* expressly and favorably recognized the court of appeals' solvency reference to the Fund as the state of the law. 289 Ark. at 532.

As already noted, our court, after deciding *Stucco Plus* as it did, had cases going opposite directions as to how Arkansas's Fund law should be interpreted and what, if any, effect insolvency of the Fund should play in awarding benefits. As I see it, this court was either correct in its holding in *Riceland Foods* and *McCarver*, or it was correct in *Stucco Plus*, and it is this court's province and duty to decide which case(s) should prevail. *Stare decisis* is simply not the issue; the issue, instead, is whether the rationale in *Riceland Foods* and *McCarver* prevails or whether the reasoning in *Stucco Plus* should stand.

Because I believe solvency of the Fund has no relevance when construing Fund provisions, I join with the majority court in overruling *Riceland Foods* and *McCarver*.

ANNABELLE CLINTON IMBER, Justice., dissenting. There are two fundamental principles of statutory construction that prevent

me from joining the majority. The first, as the majority acknowledges, is that statutes and constitutions:

> should receive a consistent and uniform interpretation so that they shall not be taken to mean one thing at one time, and a different thing at another time. Certainly, when a constitutional provision or a statute has been construed, and that construction consistently followed for many years, such construction should not be changed.

*Morris v. McLemore*, 313 Ark. 53, 852 S.W.2d 135 (1993); *Southwest Ark. Communications, Inc. v. Arrington*, 296 Ark. 141, 753 S.W.2d 267 (1988); *O'Daniel v. Brunswick Balke Collender Co.*, 195 Ark. 669, 113 S.W.2d 717 (1938); *Tindall v. Searan*, 192 Ark. 173, 90 S.W.2d 476 (1936). The second principle is that once we have construed a statute, our interpretation becomes part of the act just as if it had been so written by the legislature. *See, e.g., Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993); *Gibson v. Gibson*, 264 S.W.2d 418, 572 S.W.2d 146 (1978); *E.C. Barton v. Neal*, 263 Ark. 40, 562 S.W.2d 294 (1978); *Merchant's Transfer & Warehouse Co. v. Gates*, 180 Ark. 96, 21 S.W.2d 406 (1929).

Adhering to these two principles, we have, on many occasions, refused to abandon our interpretation of a statute or constitutional provision in the absence of legislative action. *See, e.g., Sawyer v. State*, 327 Ark. 421, 938 S.W.2d 843 (1997) (thirty-six-year interpretation of the habeas corpus act, Ark. Code Ann. § 16-112-103); *Morris v. McLemore, supra* (one hundred-year interpretation of the statute of limitations for legal malpractice actions, Ark. Code Ann. § 16-56-105); *Burns v. Burns, supra,* (seven-year interpretation of the marital property act, Ark. Code Ann. § 9-12-315); *Scarbrough v. Cherokee Enters.*, 306 Ark. 461, 816 S.W.2d 164 (1991) (fifty-year construction of the standard of review in workers' compensation cases, Ark. Code Ann. § 11-9-711); *Southwest Ark. Communications, Inc. v. Arrington, supra* (five-year interpretation of the usury law contained in Ark. Const., amend. 60); *E.C. Lumber Co. v. Neal & Jones, supra* (seventy-year construction of the mechanic's lien statute, Ark. Stat. Ann. § 51-601); *Gibson v. Gibson, supra* (sixteen-year interpretation of the partition statute, Ark. Stat. Ann. § 34-1801).

Eleven years ago, we held in *Riceland Foods, Inc. v. Second Injury Fund*, 289 Ark. 528, 715 S.W.2d 432 (1986), and *McCarver v. Second Injury Fund*, 289 Ark. 509, 715 S.W.2d 429 (1986), that pursuant to Ark. Code Ann. § 11-9-525, the Second Injury Fund is not liable when an employee sustains successive injuries while working for the same employer. As mentioned previously, once we reached this conclusion, our interpretation became part of the Workers' Compensation Act. Since that time, the General Assembly has convened on eight separate occasions,[1] but no changes were made to Section 11-9-525 in response to our holdings in *Riceland* and *McCarver*. In fact, in 1993, the General Assembly made comprehensive revisions to the Workers Compensation Act, some of which were in response to particular cases decided by this court. 1993 Ark. Acts 796, §§ 6[2] and 31.[3] Yet, Section 11-9-525, and our interpretation thereof, remained unchanged.

Even though the legislature has, by implication, approved of our holdings in *Riceland* and *McCarver*, the majority is willing to abandon our well-established precedent in favor of the policy considerations articulated by Timberline. Although these policy considerations appear persuasive, the identical arguments were considered and rejected by this court eleven years ago in *Riceland* and *McCarver*. In particular, the majority appears to have been persuaded by Timberline's contention that our construction of Section 11-9-525 discourages employers from retaining impaired or injured workers. However, the record before us is devoid of any evidence indicating that this concern has been realized over the last eleven years. In the absence of such evidence, I am hesitant to abandon our well-established interpretation of Section 11-9-525.

---

[1] Regular Sessions in 1987, 1989, 1991, 1993, 1995 and Extraordinary Sessions in 1988, 1989, 1992.

[2] Specifically rejecting our interpretations of the exclusive remedy provision, Ark. Code Ann. § 11-9-107, in *Wal-Mart Stores, Inc. v. Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991); *Mapco, Inc. v. Payne*, 306 Ark. 198, 812 S.W.2d 483 (1991); and *Thomas v. Valmac Indus., Inc.*, 306 Ark. 228, 812 S.W.2d 673 (1991).

[3] Specifically rejecting our construction of the provision regarding the modification of workers' compensation awards, Ark. Code Ann. § 11-9-713, in *International Paper Co. v. Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990).

Finally, as we said in *Gibson v. Gibson*, "even though we might feel that decision was wrong in retrospect, the construction of the statute . . . established a rule of [law], and we are not at liberty to overturn it." Once we considered the relevant policy considerations and interpreted the ambiguous language contained in Ark. Code Ann. § 11-9-525, our construction became part of the statute itself, and it was up to the legislature to amend the act if it disagreed with our interpretation. The General Assembly has simply refused to do so, and we should not act in their stead.

For these reasons, I respectfully dissent.

CORBIN, J., joins in this dissent.